# GODDARD to use of HYDE v. DELANEY et al., Plaintiffs in Error.

### In Banc, May 11, 1904.

1. **JUDGMENT: Revival After Second Ten-Year Period.** The plaintiff in a judgment may by *scire facias* have it revived at any time within ten years after its rendition and again revived at any time within ten years after the date of the first revival, and so on indefinitely. That is the meaning of our statutes in the light of the common law, which they were designed to modify only as to the term of years that a lien might be continued and in which the judgment might be revived. The judgment in this case was rendered November 21, 1877, and *scire facias* to revive same issued August 9, 1887, and judgment of revival rendered October 17, 1887, and *scire facias* to revive again issued October 15, 1897, and judgment of revivor rendered April 8, 1898. *Held*, that the last judgment of revival was not barred by the statute.

2. ———: **Revival in Name of Assignee.** A judgment can not be revived under *scire facias* in the name of a dead plaintiff to the use of the assignee, nor can it by *scire facias* be revived by the assignee in his own name.

3. ———: **Scire Facias Without Order of Court.** The writ of *scire facias* to revive a judgment may, in a proper case, issue, as of course, out of the clerk's office, without an order of court first being had.

4. ———: **Revival in Another Division of Court.** A judgment rendered in one division of the court of St. Louis may be revived in another division of the same court.

Error to St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

REVERSED.

*T. K. Skinker* for plaintiffs in error.

(1) The court below erred in making the second order of revivor, because the judgment which it pur-

ported to revive was then more than ten years old. (a)
The legislative history of the subject shows this was
error.   Geyer's Dig. 265, sec. 59; R. S. 1825, p. 462,
secs. 1, 3; R. S. 1835, pp. 339, 340, secs. 3, 6, 10; R. S.
1845, pp. 622, 623, secs. 3, 7, 12; p. 721, sec. 1; R. S.
1855, pp. 902, 903, secs. 3, 4, 10; p. 1053, sec. 16; G. S.
1865, p. 630, secs. 3, 4, 10; p. 749, sec. 31; R. S. 1879,
secs. 2731, 2732, 2738, 3251; R. S. 1889, secs. 6012, 6013,
6019, 6796; R. S. 1899, secs. 3714, 3715, 3721, 4927.  (b)
The ten-year limitation in section 6013, Revised Statutes
1889, is an absolute bar.  The language is consistent with
section 6019, and full effect must be given to it.   St.
Louis v. Lane, 110 Mo. 254; Bank v. Ripley, 161 Mo.
131; Humes v. Railroad, 82 Mo. 227; Riddick v. Walsh,
15 Mo. 536; Roth v. Gabbert, 123 Mo. 21; St. Louis
Brew. Assoc. v. St. Louis, 140 Mo. 419; Black on Inter-
pretation of Laws, p. 84, sec. 40.   (c)   Reported cases
uphold this view.   Humphreys v. Lundy, 37 Mo. 322;
Rollins v. McIntire, 87 Mo. 507.; Mullen v. Hewitt, 103
Mo. 650; Mellier v. Bartlett, 106 Mo. 388; Holt County
v. Cannon, 114 Mo. 515; George v. Middough, 62 Mo.
549; Pears v. Goff, 76 Mo. 92; Ewing v. Taylor, 70 Mo.
398; Stewart v. Justices St. Clair County, 47 Fed. 432;
Ellis v. Jones, 51 Mo. 187; Burton v. Look, 162 Mo. 515;
Sutton v. Cole, 155 Mo. 210; Sappington v. Lenz, 53
Mo. App. 44; Stewart v. Gibson, 74 Mo. App. 232; Long
v. Thormond, 83 Mo. App. 227; Trimble v. Elkin, 88
Mo. App. 229; 2 Tidd. Prac., *p. 1096.  (2) The court
below erred in reviving the judgment in favor of El-
bridge Goddard to use of Sarah L. G. Hyde, assignee:
(a)   Because at the date of the revivor Goddard had
departed this life.   Bollinger v. Chouteau, 20 Mo. 89;
Williams v. Hudson, 93 Mo. 524; Crossley v. Hutton,
98 Mo. 196; Graves v. Ewart, 99 Mo. 13; R. S. 1889, secs.
2196, 2202; 2 Tidd. Prac., *p. 1115; Reed v. Butler, 11
Abb. Prac. 128.   (b)   Only Goddard's administrator
could revive.   R. S. 1889, secs. 6013, 6023; Gaston v.
White, 46 Mo. 486; Ewing v. Shannahan, 113 Mo. 194;

McKinney v. Mehaffey, 7 W. & S. 276; Freeman on Executions, sec. 86; 2 Freeman on Judgments, sec. 443; Simmons v. Heman, 17 Mo. App. 444. (c) The fact that the judgment has been assigned to Mrs. Hyde and the revivor is to her use makes no difference. R. S. 1889, secs. 6043, 6045, 6046; Humphreys v. Lundy, 37 Mo. 320; Sutton v. Cole, 155 Mo. 206; Welch v. St. Louis, 12 Mo. App. 518; Forbes v. Tiffany, 4 Ind. 204; Baker v. Ingersoll, 37 Ala. 503; Mayor v. Bibb County Academy, 7 Ga. 204; Georgia Laws, 1820-29, p. 182. (d) Brought as this proceeding is, nobody is liable for costs. R. S. 1889, sec. 2935; Shed v. Railroad, 67 Mo. 687. (3) The writ served on Mrs. Delany having been issued without any order of court, it was error to enter the order of revivor against her. R. S. 1889, secs. 2196, 2197, 2198, 2201; Frierson v. Harris, 5 Cold. 146; Hillman v. Hickerson, 3 Head 575; Pears v. Richards, 1 N. J. L. 206; Lansing v. Lyons, 9 John. 84; Bank v. Eden, 17 John. 105. (4) The original judgment having been rendered in Division No. Two of the circuit court of the city of St. Louis, it was error for Division No. Four of that court to take jurisdiction of a *scire facias* proceeding on that judgment. Wilson v. Tiernan, 3 Mo. 577; 2 Tidd. Prac. *p. 1089; 21 Am. & Eng. Ency. Law (1 Ed), p. 852; Haehl v. Railroad, 119 Mo. 325; State v. Eggers, 152 Mo. 485; Voullaire v. Voullaire, 45 Mo. 602.

*Ashley C. Clover* for defendant in error.

(1) The court committed no error in making the second order of revivor, because the writ of *scire facias,* upon which it was based, was issued within ten years after the first order of revivor. (a) The action of the court is sustained both by statute and authority in this State and elsewhere. R. S. 1889, secs. 6012, 6013, 6014, 6015, 6019, 6796; Eyssell v. St. Louis, 168 Mo. App. 607; Armstrong v. Crook, 83 Mo. App. 141; Ins. Co. v.

Hill, 17 Mo. App. 590; Walsh v. Bosse, 16 Mo. App. 231; Wonderly v. Lafayette County, 74 Fed. 72; Lambson v. Moffatt, 61 Md. 431; Diggs v. Eliason, 4 Cranch C. C. 619, Fed. Cas. 3904; Fagan v. Bentley, 32 Ga. 534; Slibels v. Hodges, 65 Ga. 245; Rogers v. Kimsey, 101 N. C. 559; Smith v. Palfrey, 28 La. Ann. 615; Succession of Weldon, 36 La. Ann. 851. (b) The ten-year limitation of section 6013, Revised Statutes 1889, is only a bar when the judgment creditor has permitted his judgment to lie dormant for ten years. Only such a construction is consistent with other statutory provisions. Secs. 6012, 6013, 6014, 6015, 6019, R. S. 1889. (c) The object of a proceeding to revive a judgment is two-fold: 1st. To preserve the lien upon the realty of a judgment debtor; 2d. To prevent its becoming barred by the statute of limitations. Eyssell v. St. Louis, 168 Mo. 607; Ins. Co. v. Hill, 16 Mo. App. 167; Wonderly v. Lafayette Co., 74 Fed. 72. (d) Although a writ of *scire facias* be a continuation of the original action, a revivor thereunder creates a new right in bar of the statute of limitations. Foster on Scire Facias, pp. 13-30. (2) The defendant in error is the successor in interest to Elbridge Goddard by virtue of an assignment made by him in his lifetime and not by reason of his death. (a) The statutory method of assignment provided by section 6043, Revised Statutes 1889, is only cumulative; a judgment may be assigned like any other chose in action, and the assignee may sue in his own name. Bank v. Bailey, 68 Mo. App. 327; Knapp v. Standley, 45 Mo. App. 264; Asher v. Railroad, 89 Mo. 116; State ex rel Bayha v. Philips, 97 Mo. 331; Sprulock v. Sproule, 72 Mo. 503; Lanier v. McIntosh, 117 Mo. 508. (b) If the writ of *scire facias* is a new action the assignee may therefore have same issued in his own name. Secs. 1990, 2204, R. S. 1889. (c) If the issuance of a writ of *scire facias* is held to be a continuation of the original action, then the assignment creates a transfer of interest and the judgment may be revived in the name of the assignee.

Sec. 2204, R. S. 1889; Bank v. Bailey, 68 Mo. App. 327. (d) The petition did not ask, nor did the mandate of the writ bid the judgment debtors show cause why the judgment should not be revived in favor of Elbridge Goddard to the use of Sarah L. G. Hyde, and if there was error in so reviving the judgment, the defendant in error is entitled to have the same corrected and a proper judgment entered either here or in the court below. (e) The issuance of the writ tolled the Statute of Limitations and defendant in error should not be prejudiced in this respect by an erroneous revivor not in accord with the mandate of the writ. Andrews v. Buchler, 74 Mo. 428; Wonderly v. Lafayette Co., 74 Fed. 72; Ins. Co. v. Hill, 17 Mo. App. 590; Succession of Weldon, 36 La. Ann. 851. (f) Provision for the costs of the proceeding could have been made and the failure to do so is not error. Sec. 2204, R. S. 1889; Asher v. Railroad, 89 Mo. 116. (3) An order of court was not necessary to authorize the issuance of the writ served upon Mrs. Delaney. (a) The defendant in error was not the representative or successor in interest of Goddard as the result of his death and, consequently, sections 2196, 2197, 2198, Revised Statutes 1889, have no application. (b) An order of court is not necessary to authorize the issuance of a writ of *scire facias*. Seibels v. Hodges, 65 Ga. 245; 2 Tidd's Pr., p. 1112. (4) The original judgment was rendered in the St. Louis circuit court, it remains there, the writ was issued out of said court by the clerk of said court, under the seal of said court, and was returnable in the same court.(a) These are all the requirements of the law. Foster on Scire Facias, p. 551.(b) And they have all been complied with, as the record here shows.

IN BANC.

PER CURIAM:—The following opinion in this case in Division No. 1 is adopted as the opinion of the Court in Banc. *Robinson, C. J., Burgess, Gantt* and *Valliant, JJ.,* concur *in toto; Brace* and *Marshall, JJ.,* concur in paragraphs I, III and IV, and dissent in paragraph II; *Fox, J., concurs* in paragraphs II, III and IV, and dissents in paragraph I.

IN DIVISION ONE.

VALLIANT, J.—This cause comes up on a writ of error and presents for review the proceedings of the circuit court in reviewing a judgment by *scire facias.* As there are several assignments of error we will state separately the facts which bear on each assignment.

I. The original judgment was rendered November 21, 1877, in favor of Elbridge Goddard, plaintiff, against Christiana M. Sloan, Sophia Sloan and Elizabeth Sloan, defendants, for $2,667.85, bearing interest at ten per cent per annum. On August 9, 1887, a *scire facias* to revive the judgment issued, which was duly served on the defendants therein, and in pursuance thereof on October 17, 1887, a judgment of revival was rendered and entered in due form. On October 15, 1897, a petition was filed praying for a second *scire facias* to again revive the judgment against two of the original defendants, Elizabeth Sloan (who then by marriage had become Elizabeth Delaney) and Sophia Sloan, the other defendant, Christiana M. Sloan having died. Upon the filing of the petition a *scire facias* issued as prayed, which was duly served on Mrs. Delaney, and returned not found as to Sophia Sloan. Thereupon the court ordered an alias writ for Sophia, which was duly served, and upon its return both defendants making default, the court on April 8, 1898, rendered judgment of revivor. The judg-

ment at that date with interest amounted to $8,105.06. It is to review the action of the court under the second *scire facias* that this writ of error is prosecuted.

Upon the foregoing facts the plaintiff in error says that the judgment should be reversed because when the second *scire facias* issued the original judgment was more than ten years old. In support of this assignment the plaintiff in error relies on section 6013, Revised Statutes 1889, which was the law at that time: "The plaintiff or his legal representative may, at any time within ten years, sue out a *scire facias* to revive a judgment and lien; but after the expiration of ten years from the rendition of the judgment, no *scire facias* shall issue."

If that were the only statute on the subject the proposition of the plaintiff in error would be unanswerable. But closely following that section and *in pari materia* with it is section 6019: "If upon the service of the *scire facias* or publication as aforesaid, the defendant, or any of his creditors, do not appear and show cause against reviving the judgment or decree, the same shall be revived, and the lien continued for another period of three years; and so on, from time to time, as often as may be necessary."

To understand these two sections they must be read together and also in connection with section 6011 and 6012, Revised Statutes 1889, which are to the effect that a judgment shall be a lien on the real estate of the defendant in the county in which it was rendered, and "such liens shall commence on the day of the rendition of the judgment, and shall continue for three years, subject to be revived as hereinafter provided."

Thus we have the statute declaring that the judgment shall be a lien on the defendant's real estate in the county for the term of three years subject to be revived, that the plaintiff in judgment may have *scire facias* at any time within ten years, but not after, to revive his judgment and his lien, that upon the return of

the *scire facias,* if cause to the contrary is not shown, the judgment shall be revived and the lien continued for another period of three years, and that the process may be repeated "from time to time as often as may be necessary." It is contended on the part of the plaintiff in error that these statutes taken together mean that within the period of ten years from the rendition of the original judgment the plaintiff may have as many writs of *scire facias* as he may need to keep the lien of his judgment in force, but beyond that period no such writ can issue. If the only object to be accomplished by the *scire facias* was the preservation of the lien there would be much force in that position. But the writ is not limited to that purpose. It is designed to revive the judgment itself and give it a new vitality. In this connection we must read also section 6020, Revised Statutes 1889, which is *in pari materia* with the other sections and is: "Execution may issue upon a judgment at any time within ten years after the rendition of such judgment." This section abrogated the common law on the subject which limited the period in which an execution might issue on a judgment to a year and a day from the date of its rendition. After that period by the common law the judgment was dormant and the plaintiff had no remedy but to sue on his judgment and obtain a new one. But that difficulty was remedied by the statute of Westminster 2, 13 Edw. 1, ch. 45, which extended the remedy by *scire facias* to personal judgments on which execution had not issued for a year and a day. Our statute goes further than the English statute and allows a plaintiff to have execution on his judgment without *scire facias* at any time within ten years from the date of the rendition of the judgment. It may be noted that section 6020, which says that execution may issue on the judgment any time within ten years from the rendition thereof, does not say it shall not issue after that period, and in that respect it is different in form of expression from section 6013

which says that plaintiff may sue out a *scire facias* at any time within ten years but that no *scire facias* shall issue after that period. Yet the effect is the same in both sections, as will appear when applied to the common law rules which they were designed to change. By the common law the writ of *scire facias* to revive a judgment could issue at any time within twenty years from the date of the rendition. Therefore, when our statute gave the plaintiff in the judgment a right to the writ, but intended to limit its exercise to a period less than the common law prescribed, it was necessary that express terms to that effect should be used. But section 6020, giving the right to sue out executions on the judgment at any time within ten years, was an extension of the common law right, and therefore no words of restriction were necessary because there was nothing to restrict.

The effect of section 6020, therefore, was to give the judgment full vitality and unrestricted force for ten years. During that period it needed no *scire facias* to revive it. Therefore, when the statute gives the plaintiff the right to revive his judgment by *scire facias* it must mean that it is intended to give it a new lease of life beyond the first ten years. The plaintiff in error does not question the right of the judgment plaintiff to have his judgment revived as many times as he sees fit within the first ten years to keep his lien alive, nor his right to extend the life of the judgment itself for a period of ten years beyond the date of the last revival rendered during the first ten years, but he says that after the first ten years have expired no *scire facias* can issue, and that the language used in section 6019 indicating that the process may be repeated from time to time as often as may be necessary must be understood as referring only to revivals of the lien, which expire every three years. The language of that section, however, and of all the sections in its immediate connection, relating to the same subject, provide not only for a re-

newal or continuance of the lien, but for a revival of the judgment also, and we would have to strike out the words in section 6019 relating to reviving the judgment if we should say that the words relating to the repeating of the process from time to time as often as may be necessary apply only to renewing the lien.

To fully appreciate the proposition advanced by the learned counsel for the plaintiff in error we must keep in mind the writ of *scire facias* and the proceedings thereunder as they were known at common law. Our statute giving the remedy by *scire facias* to revive a judgment and continue the lien thereof and prescribing the procedure in such case, is not a part of our code of civil procedure, but is an adoption of a common law writ, with its usage and the procedure at common law thereunder, except as altered by the statute itself and except as the provisions of the practice act necessarily bear upon the subject. The use of this writ for this purpose, and the procedure thereunder, were adopted, as is pointed out in the brief of the learned counsel for plaintiff in error, in the very beginning of our existence as a State, long before the adoption of our code of civil procedure, and have come down to us from that early date with only slight changes. A glance at the common law writ of *scire facias* and the procedure under it will assist us in interpreting our statute.

Neither by the common law nor the English statute above referred to did the writ of *scire facias* have anything to do with the perpetuating the lien of the judgment; that is an effect given to the writ by the Missouri statute; the common law and the English statute looked only to the revival of the judgment. By the common law if execution did not issue within a year and a day from the date of the personal judgment it could not issue thereafter, and the only remedy the plaintiff in the judgment had was to sue on it and to obtain a new judgment. But after the statute of Westminister 2 extended the writ of *scire facias* to personal judgments,

they were subject to revival by that process. The judgment of revival was not the creation of a new personal judgment, but was the quickening into activity the original judgment which had become dormant. The form of the judgment of revival was not that the plaintiff have and recover of the defendant a certain sum, but, reciting the former judgment, it was that the plaintiff have thereof execution.    [19 Ency. Pl. and Pr., 288.] It was a judicial determination that the original judgment was in full force and unsatisfied (or if partly paid, then *quoad residuum*), and it gave to the original judgment the same force and effect as if it had been rendered on the day of the revival. The life of a personal judgment at common law was twenty years, and so it was under our law when this judgment was rendered in 1877. At any time within twenty years under the common law and English statute a *scire facias* to revive the judgment might issue, and since the revival was the judicial infusion of a new life into the original judgment the limitation of twenty years was counted from the date of the revival, and therefore at any time within the second period of twenty years *scire facias* could issue to revive it again or suit might be brought on it. [Foster on Sci. Fa. (73 Law Lib.), *30; Kelly on Sci. Fa., 296.]    By the acknowledgment in writing of a debt the statute of limitations is arrested and so by repeated acknowledgments of that kind the bar of the statute of limitations may be deferred from time to time indefinitely. This uniform interpretation of the statute of limitations has never been regarded as violating the language of that statute, which in its terms is quite as explicit in limiting the right of action to the period named (sec. 4271, R. S. 1899) as is section 6019 in limiting the right to this writ to ten years from the date of the rendition of the judgment. The same principle which controls the operation of the statute of limitations in this respect applies to a judgment of revival on

*scire facias*; each such judgment of revival gives a new beginning of the life to the original judgment.

Our statutes on this subject, as we have seen, have come down to us from the earliest days of the State's history, antedating our practice act, and they show that when our lawmakers were dealing with this subject they took the writ of *scire facias* in its technical sense as we inherited it from England, and so we must apply it, changing its effect only in the particulars in which our statutes have changed it. Those changes so far as they affect the question now before us were two, viz: authorizing execution on original judgment to issue at any time within ten years, and adding to the office of the writ the continuation of the judgment lien. Thus the writ as affecting personal judgments accomplishes under our statute two objects, the revival of the judgment and the continuation of the lien, and it is of proceedings under that writ, prosecuted with those two purposes, that our statute says the judgment "shall be revived, and the lien continued for another three years; and so on, from time to time, as often as may be necessary." The natural meaning of that language is that the process may be repeated as often as may be necessary to keep the judgment alive and the lien in force. The words "continued for another period of three years" refer to the lien only, not to the judgment. The life of the judgment is ten years, the life of the lien three years; the judgment is revived, the lien continued. Therefore, when the statute says the judgment is revived and the lien continued it means that a new life of ten years is given to the one and of three years to the other, and the words "and so on from time to time as often as may be necessary" apply as well to one as to the other.

We hold, therefore, that a *scire facias* may issue to revive a judgment at any time within ten years from the date of its rendition or that of its last revival.

II. It appears on the face of this writ of *scire*

*facias,* by its recitals, that Elbridge Goddard, the original plaintiff, was dead when the writ issued, and that the judgment had been assigned to Sarah L. G. Hyde on whose petition it issued, and the judgment of revival was that the original judgment "be again revived in favor of Elbridge Goddard to the use of Sarah L. G. Hyde, assignee, and against Elizabeth Delaney and Sophia Sloan, and the lien thereof continued," etc. Plaintiff in error contends that the judgment could not be revived in the name of the deceased plaintiff to the use of the alleged assignee.

It is no answer to this objection to say that it relates merely to the form of the order of revival, because in fact it challenges the right of the assignee, under the conditions named, to use the writ, and it is no answer to say that the point is very technical, because we are dealing with a technical subject.

Our statute, section 6043, Revised Statutes 1889, provides that judgments may be assigned and the assignments attested in a manner therein specified, and that when so assigned and attested the title shall vest in the assignee. Whether the judgment in this case was assigned and the assignment attested as that section requires, the record in this case does not show, unless the fact is to be inferred from the recital in the writ that the judgment was "legally and duly assigned." But if we assume that it was so assigned what were the remedies of the assignee? Section 6045, following closely the section last referred to, provides that execution on the assigned judgment shall issue in the name of the assignor but that the clerk shall endorse on the writ that it is for the use of the assignee, and the next section, 6046, gives the assignee the right to maintain "any action which the plaintiff in said judgment might have thereon." Is the proceeding under *scire facias* to revive the judgment an action within the meaning of that statute?

In 18 Ency. Pl. and Pr., 1066, it is said: "Where it

is expressly provided that assignees may bring actions in their own names, assignees of a judgment may sue out *scire facias* for its revival.'' The cases cited in support of that proposition relate to statutes in other States not sufficiently like ours to render the rulings serviceable to us in interpreting our own statute. The same lawwriter also in immediate connection says: ''In those of the code States where *scire facias* to revive a judgment is still in use, it seems that the assignee may sue out the writ in his own name under the code provision as to the maintenance of actions by the real party in interest.'' The only case cited in support of that proposition is Wonderly v. Lafayette Co., 74 Fed. 702, in which case what was said on the point was more in the form of a concession than a decision. In that case there was a demurrer to the writ on the ground (among others) that it ran in the name of the original plaintiff to the use of the assignee, whereas the demurrer said it should have been in the name of the assignee alone. The court said that conceding that ground to be well taken it was not fatal to the writ because it could be amended to meet that objection and it was so ordered

The same doctrine is announced in Black on Judgments, sec. 951, but the author says it is not the universal rule, and the cases cited by him go to sustain the proposition that the assignee may sue on the judgment in his own name, but leave it rather to inference that, therefore, the right to sue out the writ of *scire facias* follows. The Missouri case cited by the author in support of that text, Benne v. Schnecko, 100 Mo. 250, does not sustain the proposition.

The suing out of the writ of *scire facas* is not considered in all jurisdictions in the same light. In 18 Ency. Pl. and Pr., 1059, it is said: ''While a *scire facias* has been called an action for some purposes, and by some decisions has been apparently treated as a new action, even where its object is the revival of a judgment, the

better opinion, and that supported by the weight of authority, is to the effect that a proceeding by *scire facias* to revive a judgment is not an original proceeding, but a mere continuance of the former suit. It is merely a supplementary remedy to aid in the recovery of the debt evidenced by the original judgment, and upon such proceeding the merits of the original judgment can not be inquired into, and a judgment rendered in such a proceeding is not a new one for the debt and damages, but merely an order that execution shall issue. It may be said, however, that in all cases it is in the nature of an action, in that the defendant may plead thereto.'' It is perhaps because in some jurisdictions it has been treated as a new action and in others not, that the lack of uniformity exists as shown by the text-writers above quoted in the decisions on the question of the right of the assignee to take out the writ of *scire facias* in his own name.

In Sutton v. Cole, 155 Mo. 206, the decisions in this State on this subject were reviewed by MARSHALL, J., speaking for the court, and the conclusion was reached that the prosecuting of a writ of *scire facias* was not an action within the meaning of our code of civil procedure. In the decision in that case reference was made to Milsap v. Wildman, 5 Mo. 428, which holds the contrary, and to several decisions of the St. Louis Court of Appeals which followed that case, and they were all overruled. In Sutton v. Cole it was decided that a change of venue was not allowed because it was not an action, and in one of the cases therein cited (State v. Hoeffner, 124 Mo. 488) a trial by jury was denied for the same reason. A proceeding by *scire facias* to revive a judgment is in effect but the application by the plaintiff to the court for an execution on his judgment after the time when he could have demanded execution of the clerk. Is that an action within the meaning of our statute, section 6046, above quoted? Under the common law the assignee of a judgment was entitled to no writ in his own name to

enforce its collection, although he was afforded a remedy
in equity when necessary, and was entitled to a writ in
the name of the plaintiff to his use.   That right our
statute preserves, section 6045, directing that in such
case the execution shall issue in the name of the judg-
ment creditor, but that the clerk shall endorse on it that
it is for the use of the assignee.   That provision refers
of course to executions issuing while the judgment is in
full activity, needing no process to revive it.   But if the
Legislature when dealing with this subject expressly
restricted the assignee to moving only in the name of the
original judgment creditor while the judgment was full
of life, how can we conclude that they intended to give
the assignee the right to go ahead in his own name when
the judgment had become dormant?  We can only so con-
clude when we find that the Legislature has so said.  The
will of the Legislature is expressed in four sections :   In
6043 they say the judgment may be assigned; in 6044
they say that notwithstanding the assignment, payment
thereof to the original plaintiff shall be valid unless the
defendant is previously notified of the assignment; in
6045, that notwithstanding the assignment execution
thereof shall issue only in the name of the original plain-
tiff; and in 6046, that the assignee may maintain any
action on the judgment that the original plaintiff might
have maintained.   That is all the Legislature has said
upon the subject, and we can make nothing else out of
it, except that in taking  out execution, whether on a
dormant or an active judgment, the assignee must pro-
ceed in the name of the original judgment plaintiff, but
he may sue on the judgment in his own name.

     In this case the original plaintiff was dead when
this writ issued, there was no suggestion as to his per-
sonal representatives, but the court essayed to revive the
judgment in the name of the dead man to the use of the
assignee.   That could not be done.   Section 6023 pro-
vides, in case of the death of the plaintiff in a personal
judgment, that it shall survive to the executor or ad-

ministrator of the deceased plaintiff, and it may be revived by *scire facias* in his name. Whether a judgment assigned by the plaintiff in his lifetime, can be said to survive to his executor or administrator to the extent of allowing him to revive it by *scire facias* in his name to the use of the assignee is not before us for decision, since no such effort was made in this case. It is sufficient in this case to say that the judgment could not be revived under *scire facias* in the name of the dead man to the use of the assignee, and that it could not by *scire facias* be revived by the assignee in her own name. So far as shown by this record the executor of the will or administrator of the estate of Goddard, if there be one, has never moved in this matter; the writ issued on the petition of the assignee. For this reason the judgment of revival was invalid and must be reversed.

III. It appears that the writ was issued in the first instance out of the clerk's office without an order of court therefor, and this is assigned for error.

Our statute gives no direction on this point and we are therefore thrown back on the common law use of the writ for its understanding. The practice in this respect was regulated by rules of court in England. [Kelly on Sci. Fa., 144, *et seq.*]

According to the author just quoted the rules of courts recognized the right to have the writ issue as of course, without order of court, when applied for within certain periods, but required such an order after such periods, and the periods were varied according to the practice of the different courts, and according to the use to be made of the writ. That author says: "But although according to the practice of the courts, a rule—made upon motion of counsel in court or chambers—be necessary before issuing a *scire facias,* after the lapse of the periods respectively above mentioned, yet the issuing of the writ without such a rule when it is necessary is a mere irregularity."

In 18 Ency. Pl. and Pr., 1072, it is said: ''It is not, as a general rule, necessary to obtain leave of court before issuing a *scire facias* to revive a judgment.''

Since our statute gives a right to the writ and makes no requirement that leave of court be first asked and obtained, and the common law made no such requirement, we hold that the writ in a proper case may issue as of course out of the clerk's office, without leave of court being first had.

IV. The original judgment was rendered in Division No. 2 of the circuit court of the city of St. Louis, and the record shows that by order of the judges of the Eighth judicial circuit the *scire facias,* when it was sued out was assigned to Division No. 4 of that court and that the proceedings thereunder were had in Division 4. It is assigned for error that Division 4 had no jurisdiction of the case.

The circuit court for the city of St. Louis, which is the Eighth judicial circuit, is one court, composed of many parts called divisions, each division being, for certain purposes, in itself a complete court, and independent of the other divisions. A suit is not begun in a division; it is begun in the circuit court, and, under rules of the court, is assigned to a division. When a cause is assigned to a division that division becomes as to that cause a whole court, and has as exclusive jurisdiction of it as a circuit court of an adjoining county has of a cause pending in it. [Haehl v. Railroad, 119 Mo. 325; State ex rel. v. Eggers, 152 Mo. 485.] Causes, however, under rules, may be transferred from one division to another, and the court in general term is empowered to make rules governing assignments and transfers of causes.

But when a suit is ended, final judgment entered and all proceedings therein have ceased, the record in the cause belongs to the whole court. In such cases when, after final judgment, proceedings like the prosecution of

a writ of *scire facias* arise, we perceive no reason why the cause, for that purpose, should not be assigned in the due course of the practice established by the rules of court to any division of the court whether it be the one in which the judgment was originally entered or not.

In Voullaire v. Voullaire, 45 Mo. 602, it was held that the division which tried the cause had no authority to send the motion for a new trial to another division to be disposed of, but that is very different from the condition above mentioned, where the suit was finally ended. We hold that the assignment of the *scire facias* proceeding to Division No. 4, was not error in this cause.

For the reason shown in paragraph II of this opinion the judgment of revival is reversed.