ANN C. VOULLAIRE, Respondent, *v.* SEYMOUR VOULLAIRE,
Appellant.

1. *Infants — Guardians — Religious faith.—* The provision (Wagn. Stat. 675,
§ 21) which prohibits committing the care of a minor to a person of religious
persuasion different from that of the parents of the minor, if another suitable
person can be found, etc., was adopted to secure in this matter the absolute
equality before the law of all forms of religious faith. But where the record
does not show that any person of the faith of the parents offered to take the
children, and a person of different faith, but every way suitable otherwise,
offered to take charge of them, *held,* that the action of the court in committing
the care and custody of the children to this person was in no respect a viola-
tion of that provision.

2. *Circuit Court of St. Louis county — Judges, duties of — Practice, civil —
Motion for a new trial.—* There is no substantial difference between the duties
of the several judges of the St. Louis Circuit Court at special term and those
of the Circuit Courts of the State. The court, at general term, may distribute
business among the several judges; but when one enters upon a trial, he is
independent of the control of the other judges, except in review of his acts,
and has the same power at special term to vacate and modify its judgments,
decrees, or orders, rendered or made at such term, as if said court was con-
stituted with a single judge. It is the duty of the judge who tries a case to
go through with it, and hear a motion for new trial if made; and he can not
refuse to hear such motion, or transfer the case and motion to any one of his
colleagues for final disposition.

*Appeal from St. Louis Circuit Court.*

*Moody* and *Neil,* and *Lackland & Martin,* for appellant.

I. The father is the natural and legal custodian of his children,
unless shown to be an unfit custodian. (The People v. Merriam,
25 Wend. 64; 18 Wend. 637; 3 Hill, 399; 19 Wend. 16.)
There is no evidence in the record tending to show that defendant
is an unfit custodian of these children.

II. The case was tried in court-room No. 1, before Judge
Rombauer, who, after hearing and deciding the case, refused to
hear or decide the motion for a new trial, and sent the case to
court-room No. 2 (Judge Smith) for trial. The motion for a
new trial was improperly heard and determined by Judge Smith.
He did not see the witnesses nor hear their testimony. He could
not judge of their credibility, nor of the case. The only judge
who can properly pass upon a motion for a new trial is the one

who heard the evidence and saw the witnesses. (Woolfolk v. Tate, 25 Mo. 597; Gen. Stat. 1865, p. 633, §§ 1, 25; *id*. 888, § 7; *id*. 634, §§ 13–14.)

III. The court erred in refusing to hear the proof offered by the appellant in the court below in support of all the allegations in his petition for review as to the character of respondent.

IV. The court erred in allowing the respondent in the court below to prove the unfitness of the appellant to have charge of the children without first allowing the appellant to prove all of the allegations set forth in his petition for review, and in allowing the respondent to prove the conduct of appellant while the relation of husband and wife existed, and upon the decree of divorce. (People v. Mercier, 3 Hill, 419–20; Bish. on Mar. and Div. 632; 30 N. H. 274; 14 Pick., Mass., 510.)

V. The decree made by the court below, upon the petition for review, filed by the appellant, was erroneous, because the grandparents are of the Protestant faith, and the children are of the Catholic faith, through their own parents (Gen. Stat. 1865, p. 468, § 21), and because it gives the care of the sons to the appellant upon condition that he transports them out of this State (the residence of the appellant) to the assistant care of Mrs. Peterson of Cincinnati. The decrees of the Circuit Court have no extra-territorial effect or operation. The Circuit Court of St. Louis county had no right to send the children of defendant to Cincinnati, Ohio, because the court would thereby send them beyond its jurisdiction, and lose all control over them.

*A. W. Mead*, for respondent.

I. The only question of fact involved in this case is whether or not the appellant here was a proper person to have the care and custody of the children. This question was decided by the judge of Circuit Court No. 1, on the evidence in the cause; and this court has repeatedly decided that it will not weigh the evidence or disturb the judgment of the lower court on the ground that the verdict or judgment is against the weight of evidence.

II. The court had the right to appoint Mr. Murray guardian of the children, although he was of different religious persuasion

from the parents of the children. "A minor shall not be committed to the guardianship of a person of religious persuasion different from that of the parents, if another suitable person can be found." (Gen. Stat. 1865, p. 468, § 21.) The court below found that appellant was unfit to have the guardianship of the children, and no person of the same religious persuasion as the parents of the children offered to take the guardianship of the children. The court, therefore, was compelled to appoint Mr. Murray guardian of the female children; and, in default of Mr. Voullaire accepting the conditional guardianship of the male children, guardian of them all.

III. The judge of Circuit Court No. 1 properly transferred the case to Circuit Court No. 2 for decision on motion for new trial. They both constitute one court, and there is no statute law to the contrary. I think it does not lie in appellant's mouth to object to the transfer of the case (with the notes of testimony from which the bill of exceptions was made up) to another judge.

BLISS, Judge, delivered the opinion of the court.

In September, 1867, the plaintiff instituted in the St. Louis Circuit Court a suit against the defendant, her then husband, for divorce, and in due time obtained a decree dissolving the marriage relation, and giving her the custody of her five children. She soon after intermarried with Isaac M. Ruth; and in November, 1868, the defendant presents a petition for a review of so much of the divorce as gives to the plaintiff the custody of the children, and asks to have them restored to him. He alleges various reasons for his request, some of which affect the character of the mother, and all of which go to her ability and fitness to rear them; and at the hearing she and her said last husband, who is made a party to the petition for review, appear and admit of record that they are unable to take charge of and educate said children, and disclaim all right to their care and custody. But notwithstanding this disclaimer, the defendant insisted upon introducing evidence against the character and fitness of the plaintiff, which the court very properly refused to admit, and held that the defendant was *prima facie* entitled to the custody and

control of the children, inasmuch as she to whom the court had committed them had given them up. The plaintiff then offered to prove that the defendant, their father, "was not a proper and competent person to have the custody and care of said children;" and, against the protest of defendant, the court permitted her to do so. A large amount of testimony upon the subject was offered upon both sides, all of which I have read with care, and I can not see how the court could have come to a wiser conclusion than the one arrived at, and looking to the good of the children, which is the primary object, what better disposition could have been made of them. The court decided that the father, from his temperament and other reasons, was an unsuitable person to have the care of them; and it appearing that a sister of defendant was living in good circumstances in Cincinnati, and that Mr. Murray, the step-father of the plaintiff, lived in St. Louis, also in good circumstances, the latter of whom appeared in court and offered to take charge of them, the following order in substance was made: It was ordered that the two boys, Belmont and Alphonso, be delivered to their father upon condition that within thirty days he places them with his sister in Cincinnati, to be put to school, and that he keep them there until the further order of the court; that George B. Murray be appointed guardian of the three girls, Italia, Elmira, and Enola, with instructions not to influence their religious belief contrary to the faith of their parents; that the access of their mother to them be at the house of their guardian, which, except in sickness, is not to be oftener than once a month; that the said Seymour Voullaire, within five days, file his acceptance of the conditional custody of his said boys; otherwise that the said Murray be guardian of them as well.

The mother was satisfied with this order, but the father refused to accept the custody of the boys upon its conditions, and filed a motion for a new hearing, which the court refused to hear, but sent it, with all the papers and minutes of testimony, to another judge of the same court, who overruled the same. This change was resisted and excepted to by the petitioner for review. The court, at general term, affirmed the decree, and the case is brought before us.

I have expressed an approval of the decree, and, unless there are errors of law in the record, we should feel bound to sustain it. There are no matters so unpleasant, and which involve such grave responsibilities, as the disposition of children upon the violent disruption of families ; and it is that, chiefly, that renders divorces so much to be deprecated. This duty in the case at bar seemed to be performed with as much delicacy and consideration as could be brought to bear upon such a case. Mr. Murray's family and the sister spoken of in Cincinnati are the only relatives of the children, except the parents, that are shown in the record. The eldest daughter, Italia, being at the trial, a little over a year ago, between ten and eleven years of age, had lived with her grandparents for five or six years, and expressed in court a strong desire to continue to live with them. Belmont, who is older, was said to be becoming irregular in his habits ; and if anything is to be made of them, they should all be placed at once under kind but firm control. This they would not receive from either parent. One of the strong reasons given by the judge who tried the case, in an excellent opinion filed with the briefs, why the father should not have the absolute custody of the children, was his conduct upon the trial. He there insisted more than once, notwithstanding every legal reason for it was gone, upon his right to introduce evidence to blacken the character of his former wife, and excepted to the action of the court which bridled him. Had he been governed by the feelings that should have possessed him, nothing could have been more welcome than to be relieved of the necessity of such an exposure, if there was any to make. The instinct of the court naturally revolted at the idea of placing the children of the divorced wife in the custody of one, father though he be, who, for its own sake, panted to hold a picture before them that would greatly tend to their own degradation. This was not the only or main reason for the action that was had, but it could but contribute to impress other testimony.

The appellant raises objection to the action of the court as matter of law. He testifies that he and the mother are Roman Catholics, and desires that the children be raised in that faith,

but that Mr. Murray's family are Presbyterians. Section 21 of the chapter of Guardians and Curators (Wagn. Stat. 675) is as follows: "A minor shall not be committed to the guardianship of a person of religious persuasion different from that of the parents, or of the surviving parent, of the minor, if another suitable person can be procured, unless the minor, being of the proper age, should so choose." This provision was adopted to secure, so far, the absolute equality before the law of all forms of religious faith, and in view of the practice in some countries of seeking to strengthen the dominant faith by means of the compulsory custody of the young. The court evidently sought to conform its order to the spirit of this section, but still, had any Catholic family, as near and as interested in the welfare of the children as that of Mr. Murray, and suitable otherwise, offered to take the children, it would have been the duty of the court to have committed them to its guardianship. But the record does not show that any Catholic, suitable or otherwise, offered to take the children, and it was not reasonable to expect it of any outside the circle of relatives. Mr. Murray had property and no children. Mrs. Murray was their grandmother; one of the daughters had been partly nurtured by them; they were mutually attached; no opportunity offered of guardianship in the parents' faith; and what more just and natural, as well as lawful, than to commit them to this family? The father was given the boys, if he would send them to their only other relative, his sister, to attend school. He declined to receive them upon this condition, and, as the court could not send them there, they, too, were placed under Mr. Murray's care.

The other legal objection to the action of the court was its refusal to entertain the motion for a new trial, and sending it to another judge for hearing. I do not find any substantial difference between the duties of the several judges of the St. Louis Circuit Court, at special term, and those of the Circuit Courts of the State. (See Tilford v. Ramsey, 43 Mo. 410.) The court, at general term, may distribute business among the several judges (Gen. Stat. 1865, p. 889, § 15); but when one enters upon a trial, he is independent of the control of the other judges, except

in review: of his acts, and has "the same power at special term to vacate or modify its own judgments, decrees, or orders, rendered or made at such term, as if the said court were constituted with a single judge." (*Id.* § 13.) It was the duty of the judge who tried this cause to go through with it and entertain, and himself hear, the motion. It is one of those matters that peculiarly belong to the original case itself. There is large discretionary power in the judge, and the law very properly gives him an opportunity to review his decisions and correct his errors before the case can go to the appellate court. After the scurrilous and wholly inexcusable attack upon him in the papers, by the appellant, it is easy to appreciate his motive in sending the case for final disposition to another judge; but it furnished no legal reason, and the one who tried the cause should have heard and passed upon the motion.

For this error, it becomes necessary to reverse the judgment of general term and remand the cause, not necessarily for a new trial, but with directions to the judge who tried the case to hear and decide the motion for a new hearing. The other judges concur.