WHITNEY HOLMES ORGAN COMPANY, Respondent, v. JOHN PETITT *et al.*, Appellants.

\Kansas City Court of Appeals, March 4, 1889.

1. **Jurisdiction:** NON-RESIDENT APPEARING TO ORDER OF COURT SUBMITS TO. Although the circuit court has no power to order non-residents to appear and interplead, and litigate their respective rights to property or funds attached, but where in obedience to such order the non-resident appears, files interplea and goes to trial, and appeals from a judgment upon the merits, he has submitted to the jurisdiction and cannot complain of the authority of the court to make the order.

2. **Garnishment:** FRAUDULENT CONVEYANCE OF PROPERTY CAN BE TRIED IN. It is well-settled law in this state that garnishment is strictly a proceeding at law ; yet where in such proceeding the pleadings raise the issue, whether the defendant fraudulently conveyed his property to his wife, the interpleader, to hinder and defraud his creditors, such issue can be investigated in such proceeding.

3. **Evidence:** ADMISSIBILITY OF DECLARATIONS OF DEFENDANT NOT MADE IN PRESENCE OF INTERPLEADER. In such garnishment proceeding, it is not error to admit in evidence the declarations of the defendant husband made to the vendor, in the absence of the interpleading wife, pending the preparation of deeds to her as to his purpose in taking the title in the wife's name.

4. **Instructions Examined and Approved.** Instructions set out in the opinion examined, and while not discussed in detail, are adjudged to have fairly presented the respective theories of the parties to the jury.

*Appeal from the Audrain Circuit Court.*—HON. ELIJAH ROBINSON, Judge.

AFFIRMED.

*W. W. Fry*, for appellant.

(1) The court erred in making appellant a party. In actions of garnishment, courts of this state have

no authority to order non-residents to appear and inter-
plead and litigate their respective rights to the fund
garnished. *Sheedy v. Bank*, 62 Mo. 17; *Beckham v.
Tootle, Hanna & Co.*, 19 Mo. App. 605; 4 Kan. 370; 51
Pa. St. 244. The note could not have been reached by
order under section 2542, Revised Statutes. (2) Plain-
tiff in this garnishment proceeding endeavors to have
the court establish a constructive trust. Garnishment
is strictly a proceeding at law and designed to reach
legal assets in the hands of third parties, or to intercept
legal credits owing to the defendant and compel their
payment to the plaintiff. *Atwood v. Hale*, 17 Mo. App.
88; *Beckham v. Tootle, Hanna & Co.*, 19 Mo. App. 596;
*Lackland v. Garesche*, 56 Mo. 267; *Sheedy v. Bank*, 62
Mo. 24; Freeman on Ex. 159; Waples on Attach. 195;
Drake on Attach. 485; *Lackland v. Garesche*, 56 Mo.
267, and cases *supra;* Waples on Attach. pp. 201 and
202; *Weil v. Tyler*, 38 Mo. 545; 43 Mo. 581; *Scales v.
Hotel Co.*, 37 Mo. 520; R. S., sec. 2523. (3) The court
erred in admitting the statements of John Petitt to
C. B. Crews in 1882, as to his purpose in having the
deed made to Sylvia Petitt. John Petitt's fraudulent
intent and statements would not affect Sylvia Petitt
unless she participated in his fraudulent purpose and
had knowledge of, and acquiesced in, his statements.
*Durkee v. Chambers*, 57 Mo. 575; *Gordon v. Ritenour*,
87 Mo. 57; *Albert v. Besel*, 88 Mo. 154; *Gordon v.
Ritenour*, 87 Mo. 55, and cases; *Stewart v. Thomas*,
35 Mo. 207. If the transfer from John to Sylvia Petitt
was fraudulent, plaintiffs, by their *laches* and acquies-
cence, are now estopped from questioning appellant's
title to the proceeds of that property. The court erred
in giving respondent's third and fourth instructions.
*Bobb v. Woodward*, 50 Mo. 95; *Durkee v. Chambers*,
57 Mo. 581; *Hunter v. Hunter*, 50 Mo. 445; *Bradshaw
v. Yates*, 67 Mo. 221; *Landrum v. Bank*, 63 Mo. 48;
*Kline v. Vogel*, 90 Mo. 247. (4) Plaintiff's third and

fourth instructions are not supported by the pleadings or the evidence. Plaintiff charges fraudulent transfer in 1885 and recovers on fraudulent transfer of 1875. · It is error to submit to jury an issue not alleged in the pleadings. *Glass v. Gelvin*, 80 Mo. 297; *Henry v. Rice*, 18 Mo. App. 497.

*J. G. Trimble*, for respondent.

(1) The point of no jurisdiction and error in making the interpleader a party, made in appellant's assignment of errors 1 and 2, and point 1 in her brief, is not well taken for the reason that (*a*) no order was made of record requiring her to plead, and (*b*) she voluntarily appeared, pleaded and demanded a trial. (2) The point of error in admitting any evidence under the pleadings (appellant's errors number 5 and brief number 9 ) cannot now be raised, because (*a*) no general objection was made to the admission of evidence ; (*b*) no demurrer to plaintiff's reply was offered ; (*c*) no motion in arrest of judgment was made, nor (*d*) was the point made in the motion for new trial. R. S., sec. 3774 ; *Haseltine v. Ausherman*, 29 Mo. App. 451. (3) The appellant cannot now have the instructions reviewed (errors 7, 8 and 9, and briefs 4, 5, 10, 11 and 12), because she has not preserved respondent's instructions in the record, though showing some were given. *Greenbaum v. Millsaps*, 77 Mo. 474; *Birney v. Sharp*, 78 Mo. 73; *Wilkerson v. Railroad*, 26 Mo. App. 144 ; *Elsworth v. Quade*, 28 Mo. App. 421. (4) The evidence of witnesses Crews and Herrick was admissible, because the charge was fraud on the part of the defendant, and the testimony at least tended to establish the charge. Crews' testimony was also admissible, because defendant was acting as agent for his wife in the purchase of the land from Crews. (5) The transfer was to the wife, and must therefore be closely scrutinized, and the burden is upon

the conjugal pair to clearly prove the *bona fides* of the transaction. *Hoxie v. Price*, 31 Wis. 86; *Fisher v. Shelver*, 53 Wis. 501, and authorities cited; Wait's Fraud. Conveyances, secs. 300 and 301. (6) When fraud is alleged and proven it strips property of an apparent trust and renders it liable to be reached by a legal proceeding. The fraudulent grantee may be made to disgorge by garnishment. *Lackland v. Garesche*, 56 Mo. 271; *Mastin v. McBride*, 81 Mo. 349.

PER CURIAM.—This controversy grows out of a garnishment proceeding on execution. In January, 1887, plaintiff recovered a judgment in the Audrain county circuit court against John Petitt, issued an execution thereon, and one M. Y. Duncan was summoned as garnishee to appear in said circuit court and make answers touching his indebtedness to John Petitt. On the fourth day of February, Duncan appeared in said court and filed his answers to the usual interrogatories. To the first he denied having in his possession or under his control, property or effects belonging to the execution defendant. To the second he denied owing the defendant in execution, but continued : " that at the time of the garnishment he was indebted in a note of about two hundred and thirty-one dollars * * * which note he executed to Sylvia Petitt, the wife of John Petitt, as a part of the consideration for the land bought by garnishee of said Sylvia Petitt, known as the Crews land, and for which, she with her husband conveyed said land to him by deed. That said note is overdue being made payable one day after date," etc.

Plaintiff filed reply to the answer of the garnishee denying that said garnishee was not indebted to John Petitt, admitting that the note was executed in name of Sylvia Petitt, but alleged it to be the property of John Petitt, and further alleging that the real estate mentioned in answer of garnishee, and which was the consideration for the note, was the property of John Petitt,

and that when the same was purchased from the former owner, it was paid for with the money and property of the defendant in execution, John Petitt, but that the deed therefor was taken in the name of his wife, Sylvia Petitt, for the purpose of hindering and delaying and defrauding the plaintiff and other creditors, from the collection of their debts, that said land was transferred to Sylvia Petitt without consideration by her paid, and after the contraction of the debt to plaintiff.

It appears that, on motion filed by plaintiff, Sylvia Petitt was ordered to appear and interplead. She appeared by attorney and filed her interplea, claiming the debt owed by Duncan as her separate property ; the plaintiff took issue with her plea, and on the issues thus formed the cause proceeded to trial.

The plaintiff offered evidence tending to establish the following facts : That in 1875 and prior thereto John Petitt, and Sylvia, his wife, resided at Jackson, in the State of Michigan, that at that time John Petitt was engaged in selling organs, and that in December, 1875, he executed to plaintiff his promissory note for one hundred and thirty-three dollars, the purchase price of an organ, that in July, 1876, plaintiff sued John Petitt on this note, and in May, 1877, obtained a judgment against him, in the circuit court of Jackson county, Michigan, that some time during the year 1876, John Petitt quit business, and his wife Sylvia commenced the business which he had been following, and continued to sell organs up to the year 1881. The business being conducted in her name. Evidence was introduced tending to show that the husband assigned to his wife about three thousand dollars' worth of organ contracts ; that she bought property in Jackson, Michigan, built a house, etc. That in 1882, the parties moved to Missouri and purchased of one C. B. Crews six hundred and twenty-three acres of land, taking deed in Sylvia's

name, paying fifteen hundred dollars in cash and executing a note for fourteen thousand five hundred dollars to cover the unpaid purchase money, it to be paid in installments of twelve hundred dollars per year. That they lived on this land from 1882 until 1885. That in 1885, they sold four hundred and twenty-three acres of this land to one Duncan for thirteen thousand five hundred dollars.

In November of this year they borrowed of one Belle Herron two thousand dollars, securing its payment by a mortgage on the remainder of the six hundred and twenty-three acres, and that in same month they purchased of one James F. Crews eighty acres of land for seventeen hundred and fifty dollars, a part of the two thousand dollars borrowed of Belle Herron. That in December, 1885, they sold this last named eighty acres of land to the garnishee, and that the note mentioned in his answer was given for the unpaid purchase money therefor.

Plaintiff offered C. B. Crews, who testified, among other thing, that he sold the six hundred and twenty-three acres of land to John Petitt * * *, that after making the contracts, witness and John Petitt went to Mexico to have the deeds drawn, that on the way Petitt said he wanted the land deeded to his wife, that he, witness, told Petitt that the trade was with him and not with his wife, that Petitt then told him that the money was his, that he had property in Michigan worth fifteen thousand dollars, but he had gotten into trouble with an organ company up there, and had put everything in his wife's name to keep them from getting it. The defendant interpleader objected to such evidence on the ground that Petitt's statement not made in his wife's presence could not be admitted against her.

The court overruled the objection and the defendant properly excepted. Plaintiff introduced other evidence

tending to show that John Petitt was in debt and that he placed his property in his wife's name to avoid his creditors.

The theory of the interpleader shown by her evidence which is abstracted as follows : "I live in San Diego, California, was married to John Petitt in 1862. I had then two thousand dollars, and loaned it to Mr. Petitt. Mr. Petitt was in the music business at Jackson, Michigan, from 1869 to 1874. In 1875 I commenced the music business in Jackson, Michigan, in my own name and continued it until 1881. In April, 1876, I bought two lots in Jackson, Michigan, of Mr. Shoemaker, and afterwards built a house and barn on them. I paid for the lots and buildings with money out of my business. In 1875 and 1876 I bought two lots in Vandalia, Missouri. In 1882 I bought a section of land in Audrain county, Missouri, paying fifteen hundred dollars down and the rest in deferred payments. Afterwards, I sold a part of that section of land to M. Y. Duncan, he gave me my notes for it, the same notes I had given when I bought the farm of Mr. C. B. Crews, amounting to about fourteen thousand five hundred dollars. I then bought eighty acres of land adjoining the C. B. Crews land of J. F. Crews for seventeen hundred and fifty dollars. I sold that eighty acres to M. Y. Duncan. The note garnished herein was given to me in part payment of that eighty acres. That money belongs to me. I have been doing business in my own name since 1875. I never did any business with plaintiffs, I have never sold any of their organs."

The deposition of John Petit, introduced without objection, was to similar effect. The court instructed for the plaintiff as follows :

"1. If the jury believe, from the evidence in the case, that the land purchased from C. B. Crews in 1882 was paid for by money belonging to John Petitt and

that the title thereto was taken in the name of Sylvia Petitt in order to hinder, delay and defeat creditors, and that the land bought of James F. Crews was paid for by money arising from a mortgage on the land bought of C. B. Crews, they will find for the plaintiff.

"2. The court instructs the jury as a matter of law that all money that Sylvia Petitt had at the time of her marriage to John Petitt, if any she had, became the absolute property of said John Petitt, if by him reduced to possession, and he cannot defeat his creditors by putting his property in his wife's name.

"3. If the jury believe from the evidence in the case that John Petitt transferred some organ contracts to his wife, Sylvia Petitt, in 1875, and that said transfer was fraudulent and for the purpose of cheating and defrauding creditors, then the proceeds of said contracts remained the property of John Petitt and no title to any property or improvements bought or paid for therewith vested in his wife, Sylvia Petitt, as against plaintiff's judgment.

"4. If the jury believe from the evidence in the case, that the title of John Petitt, upon which the judgments read in evidence were rendered, was created in 1875, and that afterwards in 1877 the land in Jackson, Michigan was conveyed to Sylvia Petitt and that said land was paid for and the improvement made thereon by the money of John Petitt, and the payment of fifteen hundred dollars to Crews as part payment on the farm bought from him in Audrain county was realized out of the land in Jackson, Michigan, and that the last eighty-acre tract, conveyed by Mrs. Petitt and her husband to M. Y. Duncan, was bought with money raised by a mortgage on a part of the land bought of Crews, then the note given by said M. Y. Duncan to Mrs. Petitt which is garnished herein is liable for the payment of plaintiff's judgment and the verdict must be for plaintiff." And for defendant interpleader as follows:

"1.   The jury are instructed that, if John Petitt was indebted to his wife for money borrowed of her or otherwise, he had the right to prefer her before all other creditors and pay her money or assign her property in payment of such indebtedness, although he was at the same time owing plaintiffs or other parties, and so preferring and paying any amount he owed his wife was not fraud.

"2.   The court instructs the jury that if the note in question was a part of the profits made by Sylvia Petitt arising out of her business while in Jackson, Michigan, or out of the sale of the lands purchased of C. B. Crews, then the same is not liable for the debts of John Petitt, and the verdict must be for defendant.

"3.   The jury are instructed that if the note in question is a part of the purchase price from Duncan to Sylvia Petitt for land which said Sylvia Petitt owned and held as her separate estate, then it is not liable for the debts of the husband and the verdict must be for the defendant.

"4.   Even if the jury should believe, that John Petitt in 1875 or 1876 conveyed property to his wife to hinder or delay his creditors, if they find that she was conducting business afterwards in her own name and out of funds arising from said busines, and *not from proceeds of said property of John Petitt*, and erected a building thereon and afterwards sold said property and purchased farm lands in Missouri in her name as her separate estate, and that the note in question arises from from the sale of said lands, the verdict must be for defendant. "

The court modifying the last by inserting the words in italics.

The verdict and judgment were for plaintiff from the latter of which Sylvia Petitt, the interpleader, has appealed to this court.

I.   It is urged here by counsel for appellant that the court erred in making appellant a party defendant or in compelling her to come into court and interplead in the cause, she being at the time a non-resident of the state.   It is difficult to see how this objection can be made available at this late date.   It is true that in *Sheedy v. Second National Bank*, 62 Mo. 17, it was decided that in such actions courts of this state have no power or authority to order non-residents to appear and interplead, and litigate their respective rights to property or funds attached.   The reason for such a ruling is apparent.   The non-resident being beyond the jurisdiction of the court it can exercise no control.   It is purely a question of jurisdiction.   But here Sylvia Petitt appeared in court by her counsel whose authority is unquestioned, and filed her interplea, went to trial upon the merits of the case and has appealed from a judgment rendered upon the merits.

It is our judgment that in so doing she submitted herself to the jurisdiction of the court, and that it is too late to question the authority of the court to make the ruling complained of.

II.   The defendant argues that the demand, if any, is of an equitable nature, and therefore cannot be litigated in a garnishment proceeding.   It is claimed that plaintiff seeks to have the court establish a constructive trust.   There can be no doubt that it is well-settled law in this state that garnishment is strictly a proceeding at law ; one design to reach legal assets in the hands of third parties and to intercept legal credits owing to the defendant and to compel their payment to the plaintiff, as contended by counsel, but it is not the law of this state that, where it is alleged that there has been a fraudulent transfer of property as in this case, the question of fraud cannot be investigated in garnishment proceedings.   In *Lackland v. Garesche*, 56 Mo. 267, Judge

ADAMS draws the distinction between an equitable proceeding to enforce a trust and such an investigation as the one at bar, in these words—"In my judgment, it was not contemplated by the legislature to authorize a court of law, in a mere side issue growing out of an attachment suit ( it would be the same on garnishment on execution ), to exercise the intricate and complicated duties of a chancellor in the enforcement of purely equitable trusts. It is competent, under our statute, to summon a fraudulent assignee of property and effects, and compel him to disgorge in favor of a creditor. For when such issue is found in favor of the creditor, no trust exists, and the property or effects can be delivered over without trouble, to satisfy the debt." This language was cited and approved in *The State ex rel. Mastin v. McBride*, 81 Mo. 349. It is also, so held by the St. Louis court of appeals. *Egerman v. Krieckhaus*, 7 Mo. App. 445; *Dodd, Brown & Co. v. Levy*, 10 Mo. 121; *St. Louis Brokerage Co. v. Cronin*, 14 Mo. App. 586.

The allegation in plaintiff's reply to the answers of the garnishee was to the effect that John Petitt being indebted to plaintiff and others, had fraudulently conveyed his property and effects to his wife, in order to hinder and defraud his creditors.

We think, under the above cited authorities, such an issue can be investigated in garnishment proceedings.

III.    It is further claimed that the statement made by John Petitt to C. B. Crews, concerning the purchase of the six hundred and twenty-three acres of land, the conveyance to his wife, etc., should not have been admitted. The only objection urged in the lower court, and here, to the introduction of such evidence is "that any conversation between John Petitt and third parties in her (Sylvia Petitt's) absence could not be admissible against her in this action."

It is claimed that John Petitt's fraudulent intent and statements would not effect Sylvia Petitt unless she participated in his fraudulent purpose and had knowledge of, and acquiesced in, his statements. In view of the facts and circumstances detailed in evidence, we confess we cannot understand how John Petitt could have been guilty of a fraud in the concealment of the title to the land in question without her prior or subsequent knowledge and acquiescence.

If the trial court was of opinion that sufficient evidence had been introduced to show that Petitt had conspired with his wife to cover up his property, then his statements might have properly been admitted, if made in furtherance of the common purpose to hinder and delay creditors.

If objection had been made that such evidence could not be admitted until other evidence of a common purpose to defraud creditors had been introduced, if this were the only grounds of its admissibility, it might have been properly withheld until such other evidence had been introduced. But in our opinion this would have only affected the order of the introduction of testimony. The issue involved under the pleadings was whether the land had been fraudulently put in Sylvia's name.

It will be noted the statement of John Petitt was made before the transfer. It was to induce the very transfer which plaintiff contends was fraudulent as to plaintiff and creditors. It was a part and parcel of the transaction itself and characterized it. If it be contended that Petitt was acting for his wife, as her agent in effecting the purchase, then his statements made *et dum fervit opus*, would have been admissible, not as hearsay but as verbal acts. 1 Greenl. Ev. 113. The case is unlike that of a grantor making subsequent statements in disparagement of his grantee's title. We do not think the objection urged by defendant is sound.

IV.   We have given consideration to the separate objections urged by counsel to the giving and refusing of instructions, but do not deem it necessary to discuss them in detail.   The evidence naturally covered a wide range.   Great latitude was properly allowed in this regard.   In the charge of fraudulent concealment or transfer of property—this is generally necessary—plaintiff endeavored to trace the funds of John Petitt from 1875 to date of last transfer.   The interpleader, from 1862, to the last transfer.

Under the evidence the jury might have concluded that the money, invested in the six hundred and twenty-three acres of land, was derived from different sources or from different investments made in Jackson, Michigan.

It was therefore necessary for the court to give instructions made applicable by the evidence.   We believe the instructions given fairly presented the respective theories of the parties and, discovering no error, it is ordered that the judgment be affirmed.