WALTER J. GRAFF, RESPONDENT, v. CONTINENTAL AUTO INSURANCE UNDERWRITERS, SPRINGFIELD, ILLINOIS, GARNISHEE OF EDMUND F. ROTERMUND.—35 S. W. (2d) 926.

St. Louis Court of Appeals.    Opinion filed March 3, 1931.

86

*Jourdan & English* and *R. F. O'Bryen* for appellant.

*Foristel, Mudd, Blair & Habenicht* and *James J. O'Donohoe* for respondent.

BENNICK, C.—This is a proceeding in garnishment in aid of an execution sued out of the circuit court of the city of St. Louis, pursuant to a judgment theretofore rendered in said court in favor of Walter J. Graff, the plaintiff, and against Edmund F. Rotermund, the defendant, the action being one for damages for personal injuries sustained by plaintiff when struck by an automobile owned and operated by the defendant. The original judgment of $1,500 was reduced by remittitur to the sum of $1,250, which, with costs totaling $117.85, brought the judgment debt to the sum of $1,367.85. Service was obtained upon the garnishee in proper form and manner, and a trial of the issues was had, resulting in the return of a verdict in favor of plaintiff and against the garnishee, with a finding that the garnishee was indebted to Rotermund, the judgment debtor, in the total sum of $1,958.89, embracing the amount of the judgment, with interest and costs. Upon the failure of the garnishee to discharge itself within the time fixed by the court, a final judgment was rendered, from which the garnishee has duly perfected its appeal.

On March 2, 1921, the Bankers Auto Insurance Association of Chicago, Illinois, issued its policy of insurance to defendant Rotermund, by which, in consideration of the payment of a life membership fee of $17.50, and the advance premium deposit of $15, and such further premium deposits as might be ordered, it agreed, among other things, to insure and indemnify the assured against actual loss from legal liability arising from claims made upon the assured for damages by reason of the ownership, maintenance, or use of his automobile, and on account of bodily injuries, including death resulting therefrom, suffered or alleged to have been suffered, by any person or persons as the result of an accident occurring while the policy was in force. The liability of the association was limited to $5,000 for injury to or death of any one person, and the policy was issued for an indefinite term, commencing with the date of issuance, and extending for so long as the assured should make payment, when and as

requested, of all premium deposits required by the association, in accordance with and subject to all terms, agreements, conditions, and limitations contained in the policy, and in the application therefor.

Other provisions of the policy which are called to our attention by counsel as being material to the issues involved in this proceeding are the following:

"The assured shall not voluntarily assume any liability, nor incur any expenses, nor settle any claim, except at the assured's own cost. However, the assured hereby agrees to take such steps as are necessary at his own cost, to protect the salvage from further damage. The assured shall not interfere in any negotiations for settlement nor in any legal proceedings brought against the assured, but the assured whenever requested by the Association, and at the Association's expense, shall aid in securing information and evidence, and the attendance of witnesses and shall co-operate with the Association (except in a pecuniary way) in all matters which the Association deems necessary in the defense of any suit or in the prosecution of any appeal therefrom.

"If any claim is made against the assured on account of any accident, injury, loss or damage . . . , the assured shall immediately give written notice thereof with as full information with regard thereto as is obtainable at the time, to the Association at its Home Office in Chicago, Illinois. If any suit is brought to enforce such a claim against the assured, the assured shall immediately forward, by registered mail, to the Attorney in Fact for the Association, at the Home Office of the Association in Chicago, Illinois, every summons and other process as soon as the same is served on the assured, and the Association will defend such suit, in the name and on behalf of the assured, all expenses incurred by the Association in making such defense shall be paid by the Association.

"No action shall lie against the Association or the subscribers thereto or any of them to recover for any loss under . . . this policy, unless it shall be brought by the assured for reimbursement of the amount of loss actually incurred and paid in money by the assured after trial of the issue (which loss shall include all court costs legally assessed against the assured in such suit and interest accruing on the judgment), not exceeding, however, in any event, the amount specified in . . . this policy.

"If the assured shall fail to make payment of the membership fee, or any advance premium deposit charged against him, within thirty days of date of notice by mail, sent to the last address of assured as shown by records of Association, or otherwise when requested to remit, this policy shall be null and void and of no effect until such payment is made, together with all premium deposits which may be levied during such suspension of this policy, and the same has been received and accepted by the Attorney in Fact before any loss shall

have occurred; but in no case will the Subscribers at the Association be liable for any loss occurring during such suspension, whether payment be subsequently made or not.''

There is no dispute about the fact that on August 4, 1921, plaintiff was struck and injured by the automobile described in the policy; that he instituted an action for damages on that account; and that on March 10, 1922, he recovered judgment against defendant, as has been heretofore indicated. Plaintiff's evidence showed that during the pendency of the defendant's motion for a new trial, negotiations were had between counsel for both parties looking to the satisfaction of the judgment; that plaintiff's counsel agreed to remit the sum of $250, provided the judgment should be paid forthwith; and that pursuant to such agreement, a *remittitur* was filed, a new judgment entered, and the motion for a new trial withdrawn.

Meanwhile, on December 20, 1921, the garnishee herein, Continental Auto Insurance Association, entered into a contract with the original insurance association, by the terms of which the garnishee assumed any and all liability of every kind and character, subject to all defenses, on each contract of indemnity or policy of insurance theretofore issued by the original association, and at that time remaining in force and effect.

The garnishee admitted in the course of its pleadings that it defended the original action brought by plaintiff against the defendant, though it averred that it did so in the mistaken belief that the policy was in full force and effect at the time of the accident, when, as a matter of fact, it had lapsed on July 27, 1921 (so the garnishee pleaded), for the nonpayment of premium. Suffice it to say that the defense was not substantiated by the evidence, nor was any request made for its submission to the jury.

Much of the controversy in the lower court centered around the claim of an alleged cancellation of the policy, which occurred (if the legal effect of the transaction was to cancel the policy), on June 6, 1924. The garnishee asserts in its brief that the purported cancellation was the outgrowth and culmination of the dispute between it and its assured in regard to whether the policy was in force at the time of the accident. At any rate, a form of release was executed by the defendant, and indorsed upon the back of the policy, whereby, in consideration of the payment by the garnishee to him of the sum of $300, he released the garnishee and its predecessor from any and all claims, suits, or judgments then pending or afterwards accruing under the policy, and therewith surrendered the same to the garnishee for cancellation. Such release was excluded by the court, as was also the draft with receipt attached which was offered by the garnishee for the purpose of showing that the consideration for the release had been paid to and received by the defendant.

The pleadings in the case are quite lengthy, and in view of our statement of the facts, it will not be necessary to make an extended reference to their contents. The prime issue was, of course, whether the garnishee, on May 18, 1928, when service of the writ was had upon it, was indebted to the judgment debtor under and by reason of the policy in question. Of the several defenses which were advanced in the pleadings, the garnishee still insists upon the validity of the "no-action" clause as a bar to plaintiff's recovery, and upon the release taken from the judgment debtor long prior to the institution of this garnishment proceeding. Plaintiff's position, on the other hand, was and is that both the "no-action" clause and the purported release were void, and of no binding effect.

A matter of prime insistence in the brief and argument of the garnishee is the claim that the division of the circuit court of the city of St. Louis in which this proceeding was brought to trial was without jurisdiction to hear and determine it. Briefly stated, the position of the garnishee is that Division 6 of the court, wherein the principal action was tried, retained jurisdiction thereof until the final determination of the case; that the present proceeding is but ancillary to and a continuation of such principal action; and that consequently, jurisdiction of this proceeding was vested wholly in Division 6, to the exclusion of all other courts and divisions, including Division 7 where the trial was had.

While the argument of counsel is ingenious, and is stressed at great length, we are persuaded that there is no merit in the point as the facts are here presented.

It is provided by Sections 2111-2121, Revised Statutes 1929, that the circuit court of the city of St. Louis shall be composed of eighteen judges, who shall preside over the several divisions of the court; that the court shall hold general and special terms, a general term being defined as when the court sits as a court en banc, and a special term as where only one judge presides; that in general term the court may classify, arrange, distribute, and assign the business thereof, and the causes instituted therein, among the several judges as the majority of the judges may from time to time prescribe by rules or orders; that in addition to the ordinary power of making rules, the court may make all rules which its peculiar organization may in its judgment require, different from the ordinary course of practice, and necessary to facilitate the transaction of business therein; and that it may, by general rules, provide for the assignment for trial, the reassignment, and the transfer of causes from one division to another, by the action of the judge designated for such purpose by the general term.

Counsel for the garnishee rely upon that line of decisions having to do with the power of and the practice in the circuit court of the city of St. Louis, which decisions hold that a case becomes triable

before a single judge of the court, sitting in special term, after it has been assigned to him pursuant to the rules duly adopted in general term; that once the assignment is made, jurisdiction to try the case, and to transact such other business as is incident to the trial thereof, is vested soley in such judge, and cannot be exercised by any one of his associates, unless the case itself is sent to such associate in the manner provided by law and the rules of court adopted in accordance therewith; and that each judge in the trial of a case assigned to his division bears the same relation to the other judges of the court as do the judges of the other circuit courts of the state to each other. [Haehl v. Wabash Ry. Co., 119 Mo. 325, 24 S. W. 737; Voullaire v. Voullaire, 45 Mo. 602; State ex rel. v. Eggers, 152 Mo. 485, 54 S. W. 498.]

But such general considerations hardly serve to decide the exact point at issue. We may concede that a garnishment in aid of an execution is not the institution of a new suit, but rather it is an incident to or an auxiliary of the judgment rendered in the principal action, constituting one of the modes pointed out by statute whereby the writ is executed, and being resorted to as a means of obtaining satisfaction of the judgment by reaching the credits or property of the judgment debtor in the hands of the garnishee. [Tinsley v. Savage, 50 Mo. 141; Chicago Herald Co. v. Bryan, 195 Mo. 590, 92 S. W. 906.]

So in this instance, there can be no denial of the fact that the garnishment sued out by plaintiff was only ancillary to, and in a sense a continuation of, the principal action theretofore tried by him in Division 6 of the court, in that its purpose was the satisfaction of the judgment rendered through the substitution of the garnishee in the place of the judgment debtor. However, we cannot agree with the view of counsel for the garnishee that this theoretical unity of relationship between the two proceedings was in and of itself sufficient to deprive any division of the circuit court, other than Division 6, of jurisdiction to entertain the garnishment.

We say this for the reason that even though the principal action was necessarily tried in a division in view of the peculiar structure of the circuit court of the city of St. Louis, yet the final judgment rendered in division was none the less the judgment of the whole court, and the records in the case belonged to the whole court, and not merely to a division. With the entry of the final judgment in the principal action, all issues involved therein stood determined, and the only step left to be taken was the enforcement of the judgment in some manner provided by law. The exigencies of the particular case required that a garnishment be ordered in aid of the execution. Now the execution was issued out of the circuit court of the city of St. Louis, and not out of a division thereof, and the garnishee was summoned to appear before the circuit court of the city of St. Louis

at the return term of the writ. It was then necessary for the pleadings to be made up as contemplated by the garnishment statutes before the proceeding was ready for trial.

We observe from the record that the pleadings were filed in Division 1, which appears to have been the assignment division, and evidently the issues were made up in that division without any objection on the part of the garnishee, and the case was likewise assigned to Division 7 for trial without objection. While the rules of the circuit court are not before us, we know from the statutes that it has the power to make such rules as its peculiar organization may require, looking to the perfection of the pleadings and the assignment of cases for trial; and in the absence of any showing to the contrary, we must presume that whatever rules it had were such as were contemplated by the statutes, and that they were duly observed in this instance. If this had been a matter which was purely incident to the trial of the principal action and the entry of a final judgment therein, we would unhesitatingly say that jurisdiction was vested solely in Division 6 by virtue of the former assignment of the principal case to it, absent a proper transfer of the same to some other division. But instead, this was a matter involving the right of the whole court to enforce its judgment, and consequently we see no valid reason why the proceeding for that purpose might not have been assigned in the due course of the practice of the court to any division of the court, whether it was the one in which the principal action had been tried or not. It follows, therefore, that the point made against the jurisdiction of Division 7 must be disallowed. [Goddard to use v. Delaney, 181 Mo. 564, 80 S. W. 886; State ex rel. v. Allen, 235 Mo. 298, 138 S. W. 339.]

The next complaint of the garnishee goes to the refusal of the court to sustain its demurrer *ore tenus,* based upon the fact that the policy at issue was not filed with the pleadings, nor was it alleged therein that the same had been lost or destroyed. This objection is addressed, of course, to Section 815, Revised Statutes 1929, which provides that when any petition, or other pleading, shall be founded upon any instrument of writing charged to have been executed by the other party, and not therein alleged to be lost or destroyed, the same, or a copy thereof, verified by the affidavit of the party, shall be filed with said petition or other pleading.

In plaintiff's denial of the garnishee's answer (which corresponds to the petition in the ordinary action), the issuance of the policy was alleged, coupled with the further allegation that it could not be filed therewith because it was in the possession and under the control of the garnishee. In view of the fact that the pleading showed on its face that the policy was not filed, and gave as an excuse for such failure a reason other than the one provided by statute, namely, that it had been either lost or destroyed, the remedy selected by the

garnishee to test out the sufficiency of the pleading, absent any question of waiver by having answered, was well enough taken. The Hannibal & St. J. R. Co. v. Knudson, 62 Mo. 569.

In his brief plaintiff makes the suggestion that the statute has no application to this situation, his theory being that the garnishment is not founded upon the policy in the sense of the statute, but rather that the object of the proceeding is to impound a specific debt owing by the garnishee to the judgment debtor, and that the policy is merely evidence of the debt. Whether this conception of the law is soundly reasoned, we need not decide, for we are persuaded that in any event the instant case does not fall within the purview of the statute. The courts have consistently held that the statute must be given a reasonable construction, and that it must not be extended in its scope so as to work injustice, or to apply to cases never intended by the lawmakers. Here the policy was a contract purely between the garnishee and the judgment debtor, which plaintiff at no time had the legal right to have in his possession, custody, or control. Consequently, assuming that the garnishment proceeding is founded upon the policy, plaintiff's right to sue upon it could not fairly carry along with it the obligation on his part to file the same, or a copy thereof, along with his pleading; and in this view of the situation we think that the objection interposed by the garnishee was properly overruled. [North St. Louis Planing Mill Co. v. Essex, 157 Mo. App. 18, 137 S. W. 295.]

Next the garnishee argues that its requested peremptory instruction in the nature of a demurrer to the evidence should have been given. Predicating its point upon the general proposition that the plaintiff in a garnishment proceeding may not recover against the garnishee unless the judgment defendant could recover in an action brought by him directly against the garnishee, it suggests in the first instance that the policy in question was one of indemnity and not liability, containing a valid "no-action" clause which prohibited a recovery by the insured except after payment of the judgment; and for a second consideration, that whatever liability there was on the part of the garnishee to the judgment defendant was validly released before the institution of the garnishment proceeding, especially in the absence of any showing of the insolvency of the judgment defendant at the time of the release and cancellation.

So much has lately been written in regard to the first of the above points that further discussion of that feature of the law is unnecessary. Comparing the insuring and "no-action" clauses and the several conditions of the policy at issue with the corresponding provisions of the policies heretofore considered by the courts, it is to be observed that there is no material difference in their legal force and effect. The present policy must therefore be construed as one against liability, and not merely as a reimbursement contract, so that regard-

less of the purported "no-action" clause, a proceeding in garnishment will lie without the previous satisfaction of the judgment. Brucker v. Georgia Casualty Co. (Mo. Sup.), 32 S. W. (2d) 1088; State ex rel. v. Daues, 321 Mo. 1035, 13 S. W. (2d) 1059; Goerss v. Indemnity Co. of America (Mo. App.), 3 S. W. (2d) 272; Kurre v. American Indemnity Co. (Mo. App.), 17 S. W. (2d) 685; Jedlicka v. Missouri Mutual Casualty Co. (Mo. App.), 14 S. W. (2d) 535; Ornellas v. Moynihan (Mo. App.), 16 S. W. (2d) 1007.

The second point, based upon the purported release by the defendant of the garnishee's liability to him, and the cancellation of the policy pursuant thereto, is attended with somewhat greater difficulties.

There is no doubt about the general rule relied upon by the garnishee, that the creditor can assert no greater rights against the garnishee than the debtor himself could have claimed against him (Hoffman v. Mechanics-American National Bank, 211 Mo. App. 643, 249 S. W. 168; Wolfley v. Wooten, 220 Mo. App. 668, 293 S. W. 73; Wehrhahn v. Ft. Dearborn Casualty Underwriters, 221 Mo. App. 230, 1 S. W. (2d) 242); and proceeding upon this theory of the law, the garnishee argues that the settlement it negotiated with the defendant extinguished, not only its further liability to him, but also its liability, if any, to plaintiff, the judgment creditor, who, in this proceeding, stands in the defendant's shoes so far as concerns his right to recover against the garnishee.

This argument would be convincing enough were it not for the fact that plaintiff has pleaded that the settlement was fraudulently arranged and conducted, and was therefore void as to creditors of the defendant, of which he was one. Upon this assumption he is not in all events concluded by the release in question, for when fraud enters into a transaction, it necessarily creates an exception to the ordinary rule that a creditor can stand in no better position as against the garnishee than could the debtor himself (Leonard v. Martin, 192 Mo. App. 350, 180 S. W. 1014, aff. (Mo. Sup.), 214 S. W. 968; Potter v. Whitten, 170 Mo. App. 108, 155 S. W. 80; Shuck v. Ford (Mo. App.), 206 S. W. 427); and notwithstanding the fact that garnishment is strictly a proceeding at law, yet when the issue is properly raised in the pleadings as has been done in this instance, the question of a fraudulent transfer of the judgment debtor's property with the purpose of defrauding the judgment creditor may be tried out in such proceeding. McDaniel v. Bryan, 123 Mo. App. 640, 100 S. W. 1103; Whitley Holmes Organ Co. v. Petitt, 34 Mo. App. 536; Potter v. Whitten, supra.

It has been held that a fraudulent conveyance within the contemplation of Section 3117, Revised Statutes 1929, which declares the same to be clearly and utterly void, may take the form of a release or cancellation of a debt or claim, either without consideration,

or with the intent to hinder, delay, or defraud creditors, where such a chose in action is subject to the claims of creditors. Pickering v. Hartsock, 221 Mo. App. 868, 287 S. W. 819.

Now the garnishee has no denial of the fact that absent a release of its liability to the defendant under the policy, its indebtedness to him would be subject to garnishment at plaintiff's hands. Rather, its position is that the release was not a voluntary one, but was supported by a valuable consideration, so that the burden was on plaintiff to prove, not only that the release was executed with the fraudulent design of hindering or delaying plaintiff in the collection of his judgment, but also that the effect of such release was to leave defendant insolvent. As to this last suggestion, it argues that there was no evidence of any attempt to levy upon defendant's goods, and hence no evidence of his insolvency, and that in the absence of proof upon such essential element of plaintiff's case, he is now in no position to claim that the release was fraudulently executed so as to be void as to him.

We agree with the garnishee that inasmuch as the release purports to have been given for a valuable consideration prior to the institution of the garnishment proceeding, the burden rested with plaintiff to show its fraudulent purpose; but we do not agree that his right to recover was wholly dependent upon a showing of defendant's insolvency. We say this for the reason that the statute denominates the transaction as fraudulent and void where its purpose is to hinder or delay creditors, and consequently the authorities hold that if the intent underlying the transaction was to do that which is forbidden by statute, then it is fraudulent and void as to creditors, whether the debtor be solvent at the time or not. In other words, the mere fact that a debtor is financially embarrassed or insolvent does not deprive him in all events of his right to dispose of his property for a valuable consideration, even though such disposal may hinder or delay his creditors. The insolvency of the debtor will be highly material evidence of fraud, but after all it is the fraududent intent common to both participating parties, and not the mere fact of insolvency, which will warrant the avoidance of such a transaction. [Rupe v. Alkire, 77 Mo. 641; Klauber v. Schloss, 198 Mo. 502, 95 S. W. 930.]

We think the facts and circumstances of the present case fairly bring the transaction within the inhibition of the statute. In the first place, the *remittitur* was entered by plaintiff upon the assurance of the attorneys for the nominal defendant, but who were actually in the pay of the garnishee, that the new judgment would be paid forthwith. Payment was not made, however, as would have been expected in the ordinary course of such matters, which fact alone would amply warrant the inference of the judgment debtor's insolvency. Two years later the purported release was taken for a valuable, though

highly inadequate, consideration, the excuse being put forth that there was doubt as to whether the policy had been in force at the time of the accident, though the fact was that the company, with all of its records readily available to show the *status* of each and every policy, had exercised the right given it under the policy to take over and conduct the defense of the action against the insured, and had thereby waived its right to assert its own nonliability. It is of further significance that there was no evidence adduced at the trial in support of the contention that the policy had lapsed for nonpayment of premiums, though the garnishee did attempt to bring out such fact from its one witness, who, incidentally, had represented it in procuring the settlement with defendant. All these matters were amply sufficient to have overcome the presumption of fair dealing between the garnishee and the defendant, and to have warranted the finding that the release was taken for the purpose of hindering and delaying plaintiff in the collection of his judgment debt, so as to have rendered it void as against his right to recover from the garnishee.

It follows, therefore, that the requested peremptory instruction in the nature of a demurrer to all the evidence was properly refused.

But the garnishee insists that even though there was enough evidence to raise an issue for the jury as to whether the release fell within the condemnation of the statute against fraudulent conveyances, yet it was error for the court to have refused its instruction D, which declared that if a dispute arose between defendant and the garnishee concerning the liability of defendant for premiums and assessments, and that thereafter, and before the service of summons of garnishment upon it, the garnishee effected a settlement with the defendant, then the verdict should be against plaintiff, and in favor of the garnishee. In its brief the garnishee bases its right to have received this instruction upon the premise that at the time of the execution of the release there was a valid dispute between it and the defendant concerning its liability under the policy, which dispute it argues would have served as a sufficient consideration for the release of its liability upon the payment of only $300. Suffice it to say, as we have heretofore pointed out, that having recognized its obligation under the policy by defending the action pursuant to its terms, as well as by acquiescing in the judgment rendered, the garnishee was no longer in a position to urge its own nonliability, even if defendant had been in default in the payment of his premiums, a fact which there was no evidence to show. Consequently, upon the garnishee's own theory of the case, instruction D was properly refused.

A further assignment of error is directed to the admission of the testimony of the attorney who had represented plaintiff in the trial of the damage suit, to the effect that the *remittitur* was entered upon the promise of counsel defending the action at the instance of the garnishee that the judgment would be paid forthwith. The stipula-

tion signed by counsel at the time simply showed that the *remittitur* was to be entered, a new judgment rendered, and the motion for a new trial withdrawn. Counsel for the garnishee objected to the giving of the testimony, upon the theory that its effect was to vary and add to the terms of a written instrument by parol or extrinsic evidence. As a matter of fact, the purpose of such testimony was in nowise to vary or contradict the provisions of the stipulation, but only to explain why the same was entered into. It must be borne in mind that the question of the garnishee's fraud was a material element in the case, and the transaction attending the entry of the *remittitur* was highly relevant to that issue in that the garnishee's acquiescence in the judgment, and its promise to pay the same to plaintiff, was inconsistent with the idea that the subsequent settlement with the defendant was for a purpose other than to hinder or delay plaintiff in obtaining satisfaction. It follows, therefore, that the presence in the case of the issue of fraud took the situation from within the scope of the rule for which the garnishee contends, and rendered the testimony of the witness competent, though the transaction between the parties had been evidenced by the written stipulation. Metropolitan Paving Co. v. Brown-Crummer Investment Co., 309 Mo. 638, 274 S. W. 815; Shallcross Printing & Stationery Co. v. Brown (Mo. App.), 185 S. W. 745.

Finally the garnishee argues that even though it be held that the release of its liability to the defendant was fraudulent as to plaintiff, still credit must be allowed it in this proceeding for the amount it actually paid on the judgment to the defendant. It raises the point by insisting that the finding of the jury was excessive, as well as by assigning error to the action of the court in refusing its requested instructions, which were designed to direct the jury to allow such credit in the event of a verdict for plaintiff. We think this argument is unavailing. If the release fell within the purview of the statute against fraudulent conveyances, then it was utterly void as to plaintiff, and in this proceeding the garnishee is liable to be held accountable for the entire indebtedness under its policy without regard to the payment made in consideration of the purported release. Allen v. Berry, 50 Mo. 90; St. Louis Brewing Association v. Steimke, 68 Mo. App. 52.

Other assignments of error either present no question calling for appellate review, or else have been abandoned in the course of the brief and argument.

Finding no error materially affecting the merits of the proceeding, or prejudicial to the rights of the garnishee, the Commissioner recommends that the judgment rendered by the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.