**HARMONY UNLIMITED, INC.,**
**Plaintiff–Respondent,**

v.

**John CHIVETTA, et al., Defendant,**

and

**Nettie Chivetta, Garnishee–Appellant.**

**No. 52330.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 29, 1987.

Motion for Rehearing and/or Transfer
Denied Feb. 4, 1988.

Robert S. Flavin, Wiseman, Shaikewitz, McGivern, Wahl, Flavin, Hesi & Hale, St. Louis, for garnishee-appellant.

Kenneth J. Heinz, Carl J. Lumley, Armand Brodeur, Clayton, for plaintiff-respondent.

ROBERT H. DIERKER, Jr., Special Judge.

Nettie Chivetta, garnishee in the underlying case, appeals from a judgment entered by the Circuit Court of St. Louis County in favor of garnishor-plaintiff, Harmony Unlimited, Inc. Mrs. Chivetta argues that the trial court erred in rendering judgment against her because: (1) the evidence failed to show that she held any assets of her son, defendant John Chivetta, or owed any debt to him which could be reached by garnishment in aid of execution because the note she owed to her son was legally unenforceable; and (2) plaintiff failed to prove that she had made any payments to her son after receiving the first garnishment summons. Respondent-garnishor, Harmony Unlimited, argues that its garnishment did in fact attach an enforceable debt owing from Mrs. Chivetta to her son, and further asserts that at the time of

service of the garnishment, Mrs. Chivetta held money fraudulently transferred to her by her son. We agree with Harmony and affirm the judgment.

In January, 1981, John Chivetta transferred $126,816.29 to his mother. The transaction took the form of a loan secured by a deed of trust and evidenced by a promissory note. The note contained a provision that barred the payee (John Chivetta) from obtaining any deficiency or other money judgment against the payor (Mrs. Chivetta) in any action or proceeding on the note. The note was payable on demand and carried no interest. In January, 1983, the terms of the note were amended, releasing the security and providing a complex and well-nigh unintelligible payment scheme, replete with contingencies meaningless to this proceeding.

In February, 1983 (shortly after the promissory note given by Mrs. Chivetta was amended), Harmony obtained a judgment against John Chivetta and a corporation which he controlled or owned, J.M.C. Realty & Construction Co. Writs of execution were subsequently issued. On November 13, 1984, a garnishment summons was served on Mrs. Chivetta, returnable December 1, 1984. Interrogatories to the garnishee were duly filed and answered. Mrs. Chivetta answered that she held no money or property of her son. Harmony timely filed a reply denying Mrs. Chivetta's claim and alleging in substance that she was party to a scheme by her son to conceal assets.

On April 30, 1985, Mrs. Chivetta filed answers to respondent's supplemental interrogatories. In her answers, Mrs. Chivetta acknowledged the $126,816.29 note to her son and stated that some $40,000 remained unpaid on the note. She denied making any payments on the note during the period between service of summons and return of the garnishment, although the record discloses that she did in fact make various grocery bill payments "to or on behalf of" her son during the period from November 13 to December 1, 1984. In addition, both John Chivetta and his mother stated under oath that the note was fully repaid by the time of the August 25, 1986 pay-in order hearing. The original judgment obtained by Harmony in February, 1983, was for $35,967.24. As of the date of the pay-in hearing, Harmony had collected only $8,798.75.

At the hearing on the pay-in order, Mrs. Chivetta did not testify. She had filed answers to interrogatories served on her in 1986 in the course of a second garnishment, and Harmony introduced these answers in evidence at the hearing. John Chivetta testified, but offered no explanation for the bizarre manner in which he and his mother shifted money back and forth between them. He claimed that the series of notes he gave to his mother from 1982 through 1984 were intended to be set off against the debt his mother purportedly owed him.

■ Mrs. Chivetta first argues that the garnishment was ineffective to attach the $126,816.29 promissory note, because under the terms of the note her son had no right to collect that note from her by action for a money judgment. Because a garnishor's rights against a garnishee are no greater than the judgment debtor's rights against the garnishee, Mrs. Chivetta believes that the trial court could not render judgment against her, citing *Cusick v. Cusick,* 201 S.W.2d 437 (Mo.App.1947) and other inapposite cases. We see no reason to bandy the enforceability *vel non* of the $126,000 note. Contrary to Mrs. Chivetta's other arguments, the record in this case clearly and convincingly supports a finding that the $126,000 transaction was a fraudulent conveyance. This court-tried case can be affirmed on that basis.

■ Rule 90.01 Mo.R.Civ.P., defines "property subject to garnishment" as *"all* goods, personal property, money ... or other effects of the defendant and all debts owed to defendant." Rule 90.06 provides that the service of notice of garnishment and summons attaches garnishable proper-

ty in the garnishee's possession or under his control between the time the notice is served and the time of the return date of the writ. However, "when fraud enters into a transaction, it necessarily creates an exception to the ordinary rule that a creditor can stand in no better position as against the garnishee than could the debtor himself," and the question of a fraudulent conveyance, if properly raised in the pleadings, can be tried in the course of a garnishment proceeding. *Graff v. Continental Auto Ins. Underwriters*, 225 Mo.App. 85, 35 S.W.2d 926, 931 (1931); see also *Vaughn v. Spitz*, 682 S.W.2d 847 (Mo.App. 1984); *Harrison v. Harrison*, 417 S.W.2d 39, 42 (Mo.App.1967).

■ Section 428.020, RSMo.1986, provides that "[e]very conveyance ... made or contrived with the intent to hinder, delay, or defraud creditors of their lawful actions, damages, forfeitures, debts, or demands ... shall be from henceforth deemed and taken, as against said creditors ..., prior and subsequent, to be clearly and utterly void." Fraud, however, is seldom capable of proof directly because intent is difficult to establish. Thus, the courts have discerned various indicia or "badges of fraud," which if proven raise a presumption or at least support the inference of fraud. *See, Basman v. Frank*, 250 S.W.2d 989 (Mo.1952); *Community Federal Savings & Loan Ass'n v. Boyer*, 710 S.W.2d 332 (Mo.App.1986). These badges include: (1) a conveyance to a spouse or near relatives; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfer in anticipation of suit or execution; (5) insolvency caused by the transfer; (6) transfer of all or near all of the debtor's property; (7) retention of possession by the debtor; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. *Community Federal, supra* at 334. It is not necessary to prove each and every indicium of fraud in a given case to support a finding that a transaction was intended to hinder, delay or defraud creditors. *Id.*

In the instant case, four of the badges of fraud are patent on the face of the record. It hardly behooves Mrs. Chivetta to argue that the $126,000 note is supported by adequate consideration when she herself insists that it is unenforceable against her. Badge one: inadequate consideration for the transaction. Nor does it suffice to argue that the transfer of $126,000 from her son to her has not been shown to have rendered John insolvent at the time of the conveyance, or to have stripped him of any major portion of his assets. John Chivetta's balance sheet as of January 14, 1981, is not conclusive, when the record shows or permits the inference that the transaction at issue was merely the first step in an elaborate plan to frustrate creditors. *Harrison v. Harrison*, 339 S.W.2d 509 (Mo. App.1960). The record in this case shows beyond doubt that, after January, 1981, John depended on his mother for funds to carry on his business and even to feed himself, and that he lacked funds sufficient to pay Harmony's judgment against him. Badge two: stripping of assets to effectively create insolvency by the transfer (i.e., inability to pay debts as they come due in the ordinary course). The transaction here was between mother and son. Badge three: transaction with a spouse or close relative. Neither John Chivetta nor Mrs. Chivetta troubled to proffer to the trial court any explanation for the suspiciously recondite business dealings carried on between them over the course of several years. Badge four: failure to produce explanatory or rebutting evidence when circumstances of a transaction are suspicious. The concurrence of four of the badges of fraud supports a finding of an intent to hinder, delay or defraud creditors.

Mrs. Chivetta cites *Willman v. Beheler*, 499 S.W.2d 770 (Mo.1973) for the proposition that public policy recognizes a strong interest in protecting the freedom of persons to contract, and suggests that this public policy somehow clothes the transactions at issue here with immunity from Harmony's lawful claim. Mrs. Chivetta overlooks the language in the same case,

*id.* at 778, that equity seeks to do justice and avoid injustice. Albeit garnishment is a statutory proceeding, the cases cited above establish that fraud is not beyond its reach. There was a time when acts of bankruptcy, that is, acts intended to hinder, delay, or defraud creditors, were deemed criminal acts. *See* e.g., *Fowler v. Padget,* 7 T.R. 509, 101 Eng.Rep. 1103 (K.B.1798). Concealment of assets was once punishable as a capital offense. 4 W. Blackstone, *Commentaries* *156. The transactions evidenced by the record here clearly could serve no other purpose than to allow John Chivetta to use his own mother as a veritable parking lot for his money, to the confusion of his creditors. The Chivettas' financial transactions are precisely the sort of money shuffling the old law condemned. While the law in its wisdom has become more humane, it must not be understood to have become blind to duplicity.

We see no reason to extend this opinion further to put the correctness of the trial court's judgment beyond the reach of cavil. The judgment against Mrs. Chivetta is neither without support in the record, nor erroneous in law. Rule 73.01, Mo.R.Civ.P.

The judgment is affirmed.

CARL R. GAERTNER, P.J., and SIMEONE, Senior Judge, concur.