53 P.(2d) 459

## SILVER v. FIDELITY & DEPOSIT CO. OF MARYLAND.

No. 4042.

Supreme Court of New Mexico.

Dec. 30, 1935.

Botts & Botts, of Albuquerque, for appellant.

Waldo H. Rogers, of Albuquerque, for appellee.

Gilbert & Hamilton, of Santa Fe, amici curiæ.

BICKLEY, Justice:

This cause being before us on rehearing, and being dissatisfied with our former decision, the same is withdrawn and the following substituted therefor:

Silver sued one Tobin and Fidelity & Deposit Company of Maryland. The former defendant was not served and did not appear. The latter defendant was cast in damages and appeals.

The complaint alleged that there was due the plaintiff $986.45 for labor, services, and materials performed and furnished, as subcontractor, from Tobin, as principal contractor, upon two Federal Aid road building projects, designated as No. 131-B Roads and No. 131-B Bridges; and further that, "* * * the said Tobin was required to and did file with the State Highway Department * * * a bond to guarantee the faithful performance of said contract and the payment of all bills and obligations incurred in the carrying out of said contract, to sub-contractors and others including this plaintiff; and that the defendant Fidelity & Deposit Company

of Maryland contracted, agreed and obligated itself for the payment of all obligations of the said T. J. Tobin * * * incurred in the carrying out of said work, including the obligation here sued upon by this plaintiff."

The answering defendant denied any knowledge or information as to the facts alleged, "except that this answering defendant admits that it furnished a bond in behalf of said * * * Tobin * * * with respect to said Federal Aid Project Number 131-B, but denies that, by the bond so furnished or otherwise, it agreed or obligated itself as alleged in * * * plaintiff's complaint."

This answer also, by way of new matter, alleged failure to give the notice of claim required by Comp.St.1929, § 17-204.

At the trial two bonds were received in evidence over appellant's objection, by which appellant engaged as surety for Tobin in connection with the two projects designated in the complaint, and this is the point of error first presented, appellant's position being thus stated: "Since Appellee's action was founded upon a written bond, which was referred to in his pleading, and neither the original nor a copy thereof was filed with the pleading, Appellant's objection to the introduction of the two bonds offered in evidence should have been sustained, and their admission constitutes reversible error."

Appellee presents two counter propositions, stated thus: "It is the contention of appellee, first, that by not raising objection to the failure of plaintiff to attach a copy of said bond to the complaint by demurrer or other appropriate method prior or to trial of the cause, and by admitting execution of the original bond in its answer, appellant has waived its right to object to introduction of same on trial; and, second that it affirmatively appears from the evidence on trial that the original bond was on record in the office of the Highway Department in Santa Fe, New Mexico, and was not in the control or possession of appellee, nor did appellee have access to the said bond."

In 1882 (chapter 4) the Legislature adopted "An Act to regulate the practice in the district courts," including these provisions:

"Sec. 3. When any instrument of writing upon which the action or defense is founded is referred to in the pleadings, the original or a copy thereof shall be filed with the pleading, if within the power or control of the party wishing to use the same, and if such original or a copy thereof be not filed as herein required, or a sufficient reason given for failure to do so, such instrument of writing shall not be admitted in evidence upon the trial.

"Sec. 4. When a written instrument is referred to in a pleading and the same or a copy thereof is incorporated in, or attached to such pleading, the genuineness and due execution of such written instrument and of every endorsement thereon shall be deemed admitted, unless in a pleading or writing filed in the cause

within the time allowed for pleading, the same be denied under oath."

These provisions appear in C.L.1884 as sections 1921, 1922, and in C.L.1897 as sections 2983, 2984. In adopting a somewhat related provision of the Code (Laws 1897, c. 73, § 123, Comp.St.1929, § 105-834), these sections were expressly preserved. The 37th Legislative Assembly, perhaps overlooking this, re-enacted section 3 exactly as originally adopted. Laws 1907, c. 107, p. 296. A proviso was added in 1909, c. 144. The original language, with the proviso just mentioned, is still preserved. Comp.St.1929, §§ 105-522, 105-523.

Neither the rulings nor the findings disclose the theory on which the bonds given by appellant were received in evidence. It is not questioned by appellee that the action, as to appellant, was founded upon them; that such a bond was referred to in the pleadings; that neither original nor copy of the bonds recovered upon were filed with the complaint; and that no sufficient, nor any, reason was given for failure to file. In such a case *the statute* prescribes that "such instrument of writing shall not be admitted in evidence upon the trial." Yet they were admitted in evidence, over the specific objection here urged, and appellee has recovered upon them.

In view of the penalty which the statute attaches, we cannot hold that the right to object to the introduction of the instrument is conditioned upon a previous timely objection to the sufficiency of the complaint, by demurrer or otherwise, pointing out what the plaintiff, of course, well knows, that he has failed to file it or a copy of it with his pleading.

It is argued that it appears from the answer that appellant's attorneys were in possession of a copy of the bond; that appellant could not have been prejudiced by the failure to file a copy; and that only by rigid and unreasoning construction can the reception of the bonds be held reversible error.

The requirement of exhibiting the original or a copy thereof is conditioned upon its being "within the power or control of the party wishing to use the same." The penalty of exclusion from evidence does not follow if "a sufficient reason (be) given for failure to do so."

Appellee contends that the bonds were not within his power or control, and that evidence at the trial disclosed this fact, and that a sufficient reason was thus "given" for his failure.

In Bancroft's Code of Pleading, § 483, it is said: "Statutes sometimes require that the instrument upon which the action or defense is founded, or that the account, note, bill or other instrument as evidence of indebtedness on which an action, counterclaim or set-off is founded, be filed with the pleadings or to be attached to and filed with the pleadings, or that a sufficient reason for failure to do so be given. Provisions of this character have been said to be *designed as a substitute for the old common-law petition of oyer,* their object be-

ing to furnish the opposite party with a copy of the evidence of the instrument sued on, for his inspection, and to enable him to prepare his defense."

In Bates Pleading and Practice, at section 175, the Ohio statute is quoted as follows: "When the action, counterclaim, or set-off, is founded on an account or on a written instrument as evidence of indebtedness, a copy thereof must be attached to and filed with the pleading. If not so attached and filed, the reason for the omission must be stated in the pleading." (R.S. § 5085.)

Section 175a says: *"Substitute for oyer.* The object of this section is to furnish the opposite party with a copy of the evidence of indebtedness sued on for inspection, and to enable him to prepare his defense. (citing cases.) 'I think it quite obvious that Sec. 117 (G.C. § 11333) was intended as a substitute for oyer under the former practice, and perhaps as a requisition on the plaintiff to give in advance those copies of written instruments on which the action might be founded, which he might have been required to give on an application for that purpose under the former practice act.' Per Gholson, J., Memphis Med. Coll. v. Newton [12 Ohio Dec. 382]."

Section 176b says: *"Bonds*—Official bonds are not within this section, not being an evidence of indebtedness, *and also being a matter of public record.* Not so of other bonds." (Italics ours.)

State, to Use of Wolf v. Engelke, 6 Mo. App. 356, was an action brought by a guardian of a ward upon a bond given by the defendants as sureties of a former guardian. It was contended that the suit being upon the bond, and no certified copy of the bond having been filed until the day of trial, a motion to dismiss the suit should have been sustained. The Missouri statute provided: "When any petition, or other pleading, shall be founded upon any instrument of writing charged to have been executed by the other party, or his testator or intestate, or other person represented by such party, and not therein alleged to be lost or destroyed, the same shall be filed with such petition or other pleading." Wagner's Stat. 1872, p. 1022, § 51.

The court said: "The petition alleges that the bond is not in the possession or under the control of the plaintiff, but on file in the Probate Court; and such was the fact. We are now asked to extend this statute, and make it apply to filing copies in cases where the original can neither be filed nor an averment be made that it is lost or destroyed and to affix the penalty of dismissal of the suit to a class of cases not included in the statute. But the mere fact that a reason may exist why copies should be filed, where the originals are neither lost nor destroyed, gives the courts no power to extend the statutes. Here the relator could neither file the original, nor could he allege it to be lost or destroyed. The rule, so far as the penalty of dismissal is concerned, is a strict statutory rule, and

a case must be brought within the statute as it stands. The statute, however, has reference to the rule of the common law of pleading, which did not require profert or permit oyer when the necessary deed was lost or destroyed, but allowed issue to be taken as to the fact alleged as an excuse for not making profert. When the instrument was neither lost nor destroyed, but was in the nature of a record, other rules prevailed; and of a record proper, oyer was not demandable. Tidd's Pr. *586; Chitty's Pl. *366, *430; Thatcher v. Lyman, 5 Mass. 260. But, apart from the origin of the rule, it is enough that the present case is not within the statute."

Therefore, any judicial expressions which apply to the common-law petition of oyer will be persuasive in this discussion.

The following are some illustrative statements quoted from the Century Digest, Pleading, § 911, and Decennial Digests, Pleading, ☞305, the emphasis indicated being ours:

"A plaintiff is not bound to make profert of a deed, to the *custody* of which he has no legal right." Birney v. Haim, 12 Ky. (2 Litt.) 262.

"Profert is not necessary in a suit on an injunction bond." Carson v. Pearl, 27 Ky.(4 J.J.Marsh.) 92.

"In a debt on a bond, where the original is filed with the clerk of the court, there to remain and become a public record, as in the case of a trustee's bond, given in pursuance of a decree of court of equity, the plaintiff is not required to make a profert of it, *not being, in legal contemplation, in the possession of the original.*" Butler v. State, 5 Gill & J.(Md.) 511.

"Where it is required by statute that an official bond shall be deposited in the office of the secretary of state, 'where it shall be safely kept and preserved,' in an action on the bond a profert is not necessary." McNutt v. Lancaster, 17 Miss. (9 Smedes & M.) 570.

"In a suit on a probate bond, it is not necessary to make a profert of the original bond in the declaration." Judge of Probate v. Merrill, 6 N.H. 256.

"A guardian's bond filed in the Orphans' Court is held there in trust for all persons interested, and in a suit upon it profert is dispensed with for the reason that the bond is not in the *custody* or *power* of the plaintiff." Commonwealth v. Pray, 1 Phila.(Pa.) 58.

"Plaintiff is bound to make profert of notes declared on *if he has them in his possession.*" Anderson v. Allison, 39 Tenn. (2 Head) 122.

"A bond should be declared on with a profert *when it is in the plaintiff's possession.*" Austin v. Dills, 1 Tyler (Vt.) 308, 309.

"In a suit on a bond filed as a public record, it is unnecessary to make profert of it in the declaration." United States v. Ritchie, 14 D.C. (3 Mackey) 162.

In Graff v. Continental Auto Insurance Underwriters, 225 Mo.App. 85, 35 S.W.(2d) 926, 930, the action was founded apparently upon an automobile liability policy, neither the original nor a copy thereof being filed with the petition. The court said: "The courts have consistently held that the statute must be given a reasonable construction, and that it must not be extended in its scope so as to work injustice, or to apply to cases never intended by the lawmakers. Here the policy was a contract purely between the garnishee and the judgment debtor, *which plaintiff at no time had the legal right to have in his possession, custody, or control.* Consequently, assuming that the garnishment proceeding is founded upon the policy, plaintiff's right to sue upon it could not fairly carry along with it the obligation on his part to file the same, or a copy thereof, along with his pleading; and in this view of the situation we think that the objection interposed by the garnishee was properly overruled. North St. Louis Planing Mill Co. v. Essex, 157 Mo. App. 18, 137 S.W. 295."

In the situation before us, we find that the bond in question is one executed by defendant pursuant to the provisions of chapter 136, Laws 1923 (Comp.St.1929, §§ 17-201, 17-202). Such bonds are conditioned among other things for the payment of all just claims for labor performed, and materials and supplies furnished, upon or for the work under contracts with the state or certain subdivisions and departments and boards thereof. While persons having such claims are beneficiaries of such bonds and may sue thereon, they are not parties thereto, and such bonds are not in their possession, and over the possession, control, or custody thereof they have no power.

Such bonds are furnished to the state and its agencies and remain in the possession of and under the control and custody of the state and such agencies.

Whether the claimants for remuneration for work done or supplies furnished might secure certified copies of such bonds is beside the question. It is the original instrument in writing which must be "within the power or control" of the party wishing to use the same, before he is required to file it or a copy thereof with his pleading or suffer the penalty of having its admission in evidence refused. We hold that the court did not err in receiving the bonds in evidence.

The next question is: Did appellee fail to give the notice of claim required by Comp.St.1929, § 17-204? This statute is as follows: "No action shall be maintained on such bond unless within ninety days after performing the last item of labor or furnishing the last item of materials or supplies, the plaintiff shall serve upon the principal, sureties and obligee in said bond written notice specifying the nature and amount of the claim and the date of performing or furnishing the last item thereof, nor unless the action is begun within one year after the cause of action accrues."

It is conceded by appellee that service of the notice required by statute is a condition precedent to the bringing of an action upon the bond—a necessary step in the enforcement of the remedy.

He contends, however, that the court should adopt the rule of liberal construction of the statute and hold that a notice substantially complying with the statutory requirements is sufficient. We think this is reasonable and we so hold, being supported therein by the decisions of several courts of high standing and ability in jurisdictions where analogous statutes have been under consideration.

Liberal construction, however, must not by process of extension be carried too far lest destruction of the statutory purpose be accomplished.

It is probable that the legislative purpose was twofold. A concern that laborers and materialmen would, without the protection the statute affords, be subject to great losses at the hands of insolvent or dishonest contractors and also to supply a protection to the public through the security afforded by the bond which has a substantial tendency to lower the prices at which labor and material will be furnished, because of the assurance that claims will be paid. Cf. Equitable Surety Company v. U. S. to Use of W. McMillan & Son, 234 U.S. 448, 456, 34 S.Ct. 803, 805, 58 L.Ed. 1394.

While paid sureties are not the only ones available, we apprehend that professional surety companies are the ones most generally employed. It is readily to be perceived that a policy of "soaking the surety companies" would defeat the latter of these purposes because heavy and injurious burdens of the sureties will be reflected in premiums charged and consequently further reflected in increased cost of labor and material furnished.

There is nothing in the statute which reflects any legislative purpose to deal harshly with the surety companies. Having secured the benefits to laborers and materialmen and the public through the requirement that contractors doing public work shall furnish the kind of bond in question, the Legislature turned its attention to the protection of the sureties on the bond by requiring that: "The plaintiff shall serve upon the principal, sureties and obligee in said bond written notice specifying the nature and amount of the claim and the date of performing or furnishing the last item thereof."

The test of substantial compliance has been well stated by Vice Chancellor Stevenson for the Court of Chancery of New Jersey in John Agnew Co. v. Board of Education, 83 N.J.Eq. 49, 89 A. 1046, 1051, whose opinion was adoped by the Appellate Court in 83 N.J.Eq. 336, 90 A. 1135, as follows: "The sufficiency of a notice is mainly to be determined by a consideration of the objects of the notice. The question is: Does this paper filed in these offices convey the information which the statute intends all parties interested shall

have?" See, also, James B. Clow & Sons v. A. W. Scott Co., 162 Minn. 501, 203 N.W. 410.

The statute requires that notice be given the sureties within ninety days after performing the last item of labor or furnishing the last item of material or supplies. This was doubtless enacted for the protection of the surety company in order that it might have timely notice of contractor's failure to pay and would, therefore, be in position to take such steps as might seem advisable for its protection, such, for instance, as forcing the contractor to apply the proceeds of all monthly estimates received from the state for work on the particular job to the payment of claims against that job.

The trial court found as a fact that the only notice of appellee's claim sent to or received by appellant was a copy of a letter addressed by the state highway department of the state of New Mexico, through its chief engineer, to T. J. Tobin Construction Company, the principal contractor, which stated substantially that, with reference to F.A.P. No. 131-B, the department had received a claim against the contract in the amount of $3,213.56, covering *materials* and *supplies* mentioned or implied in the contract and bond; that the claim was being accepted and filed against the final estimate and contract bond; and that it would be necessary for claimant's release to be secured before payment of final estimate. Since this letter

plays such an important part in the argument, we set forth the body thereof:

"This department is in receipt of a claim against your contract in connection with the construction of the above project, in the amount of Three Thousand Two Hundred Thirteen and 56/100 Dollars ($3,213.-56) covering material and supplies specifically mentioned or implied in your contract and bond.

"This claim is being accepted and filed against the final estimate and contract bond on the above project. No further action will be taken by this department on this claim except as provided by law. (Chapter 108, Laws 1929)

"Before payment of Final Estimate will be made it will be necessary for you to pay this claim and secure claimant's release thereof, and file this release with this department, unless the claim is disputed and the provisions of chapter 108, Laws of 1929 are applicable."

Upon this finding of fact, appellant based its request (which was refused) for a conclusion of law: "That no sufficient written notice was given by plaintiff to said defendant to entitle plaintiff to judgment or to maintain an action."

█ Was it error for the trial court to refuse to so conclude? We hold that it was.

We pass by the objection of appellant that the fact that the highway department advised it by letter that a claim had been

filed with that department, did not constitute "service" by "the plaintiff" as literally required by the statute, although it would seem that there is merit to the contention that the statute intends that the parties against whom a claim is asserted should be advised thereof by plaintiff and not be bound by information to that effect casually acquired, and we come to the question: Does this letter convey the information which the statute intends all parties in interest shall have?

The first requirement of the notice is that it shall specify "the nature and amount of the claim." It is suggested that a readily discernible purpose of this requirement is to enable the surety and all interested to determine whether the claim is one for which recourse may be had to the bond. The principal may have obligated himself for much labor in connection with his contract, for which the surety will not be liable. Such, for instance, as repairs of machinery constituting permanent equipment. Cf. annotation 67 A.L.R. 1232.

We make no pronouncements as to the purpose of the requirement. In the case at bar, the copy of the quoted letter sent to the defendant surety company, if it had been "served" by "plaintiff," does not purport to be the statutory notice of claim. If it purports to specify the "nature * * * of the claim," such specification is at variance with the claim sued on. The action is entirely for labor, whereas in the copy of the letter in question, the claim is described as for "material and sup-

plies." It would seem that notice that plaintiff is asserting a claim against the surety company ought to have some bearing upon the action the plaintiff seeks to maintain upon the bond. We hold that the plaintiff in the case at bar failed to substantially comply with the requirements of the statute as to specification of the nature of the claim.

The third requirement of the statute is that the notice specify the date of performing or furnishing the last item of labor or materials on which the claim is based. Under our statute, the notice of the claim must be filed and served within ninety days after that date in order to hold the surety. If the claim is served after the lapse of that period, the surety will likely have no reason to take action for its protection. It is, therefore, of great importance that in receiving a notice of claim the surety be advised whether or not it is served within the statutory period and hence valid as a basis for holding the surety company liable for the claim. In order that the surety may be so advised, the Legislature has provided that the date in question be specified in the notice. What, then, could be considered a substantial compliance with this requirement? Where a notice is promptly served, it might well be said that a mistake of a day or a week in specifying the date would not be fatal, for even with such mistake the surety would have received the information that the claim was filed and served within the statutory time. But a total lack of any reference to the time of such performance totally fails

give the information intended and cannot be held to substantially comply. It is also suggested that this requirement may have another purpose. Who shall say that it is without its use in an investigation of the honesty and the fairness of the claim? It is very easy to perform one more item, to extend the time for service. The last will often be the doubtful item, the good or bad faith of which it will be determinative. Cf. Rust v. Chisolm, 57 Md. 376, 382.

We are not unaware that in Ilg Elec. Ventilating Co. v. Conner, 172 Minn. 424, 215 N.W. 675, the omission to specify the last item was held not a substantial defect. But the peculiarity of the statute there involved (section 9705, Minn.Gen.St. 1923) should be observed: "No action shall be maintained on any such bond unless within ninety days after the completion of the contract and acceptance of the building by the proper public authorities, the plaintiff shall serve upon the principal and his sureties a written notice specifying the nature and amount of his claim and the date of furnishing the last item thereof, nor unless the action is begun within one year after the service of such notice."

The limit on serving notice was ninety days after completion and acceptance under the principal contract. The court could see no purpose in specifying the date of furnishing the last item and held it unnecessary. But the court is at pains to explain what might otherwise seem a great liberty in entirely nullifying an express statutory requirement.

An earlier statute had set running the ninety-day limitation on service of notice with the date of performing the last item. This provision was changed by amendment. The court thought the failure to amend the requirement here in question, to conform to the change, an inadvertence, rendering the requirement thenceforth meaningless and absurd.

The alleged notice in the case at bar did not advise the surety of the date of the furnishing of the last item with sufficient accuracy to inform the surety as to whether or not the claim was barred as against the bond. There is not even a hint as to the date of furnishing the last item.

These defects in the paper transmitted to appellant are so glaring that to hold it a notice in substantial compliance with the statute would be to ignore rather than give a reasonable construction to such statute.

By reason of the error of the trial court in holding the notice to be sufficient, the judgment must be reversed and the cause remanded for appropriate action in accordance with the views herein expressed.

It is so ordered.

SADLER, C. J., and HUDSPETH, BRICE, and ZINN, JJ., concur.