444 P.2d 978

STATE of New Mexico, ex rel. STATE ELECTRIC SUPPLY COMPANY, Inc., a corporation, Plaintiff-Appellant,

v.

H. R. McBRIDE, d/b/a H. R. McBride Construction Company and United States Fidelity and Guaranty Company, a corporation, Defendants-Appellees.

No. 8485.

Supreme Court of New Mexico.

Sept. 9, 1968.

Burr & Cooley, Farmington, for appellant.

Stephenson, Campbell & Olmsted, Santa Fe, Palmer & Frost, Farmington, for appellees.

## OPINION

CHAVEZ, Chief Justice.

Plaintiff-appellant State Electric Supply Company, Inc., a corporation, hereinafter referred to as "Electric," brought suit on a general contractor's payment bond under § 6-6-12, N.M.S.A., 1953 Comp., for use in the construction of an annex to the science building of the Farmington High School. The case was tried to the court sitting without a jury, who denied use plaintiff Electric recovery on the ground that it had failed to comply with the notice requirement specified in § 6-6-12, supra, in that the written notice was not timely mailed. From said judgment Electric appeals.

Electric's amended complaint alleged the furnishing of certain electrical materials and supplies to a subcontractor defendant-appellee H. R. McBride d/b/a H. R. McBride Construction Company, hereinafter referred to as "McBride," to be used in the construction of said public building for which it had not received payment. After alleging a public contract between the prime contractor and the Farmington School Board for the construction of said building, and the furnishing of a payment bond pursuant to § 6-6-11, N.M.S.A., 1953 Comp., Electric sought recovery on said payment bond. McBride answered, denying generally said allegations and alleged that Electric failed to comply with the notice and limitation provision of § 6-6-12, supra, and therefore was barred from recovery therein.

The trial court denied recovery to Electric on the ground that it failed to comply with the notice requirement specified in § 6-6-12, supra, in that the written notice was not mailed to the prime contractor within ninety days from the date on which the last material was furnished for which claim was made.

Of the eighteen findings of fact made by the trial court, appellant Electric appears to challenge the following findings:

"7.  The voltage requirement of the new system was not specified in the plans and specifications.

"12.  No charge was made by the use plaintiff for the 12 volt horn, nor was it listed as a part of the materials for which claim was made.

"13.  The use plaintiff furnished the last of the material for which claim

was made on or before December 7, 1964.

"17. The written notice mentioned in Finding No. 15 was mailed to McBride more than 90 days from the date on which the last material was furnished for which claim was made."

The pertinent findings of fact not challenged by Electric are as follows:

"1. On May 12, 1964, defendant McBride entered into a contract with the Board of Education of the town of Farmington, New Mexico, to construct an annex to the science building of the Farmington High School in accordance with plans and specifications provided by the Board of Education.

"2. On or about the 12th day of May, 1964, and pursuant to § 6-6-11, N.M.S.A., 1953, McBride furnished the Board of Education a bond executed by him as principal, and defendant, United States Fidelity and Guaranty Company, a corporation, as surety.

"3. On or about the 15th day of May, 1964, McBride entered into a subcontract with Fulkerson by the terms of which Fulkerson agreed to perform all labor and furnish all material necessary to complete the electrical work required to be performed under the contract between McBride and the Board of Education.

"4. The use plaintiff, State Electric Supply Company, Inc., at the instance and request of Fulkerson furnished substantially all materials used in the prosecution of the sub-contract.

"5. The sub-contract required, among other things, that Fulkerson furnish and install a fire alarm system consisting of an alarm horn, fire alarm stations, and the alarm system was to be connected with one located in the old part of the science building.

"6. The fire alarm system located in the old part of the building and to which the system required under the sub-contract was to be connected, was a 12 volt system.

"8. Fulkerson ordered a fire alarm horn and two fire stations from the use plaintiff but did not specify the voltage or other characteristics.

"9. The use plaintiff caused a 24 volt fire alarm horn and two fire alarm stations to be delivered to Fulkerson on November 25, 1964, which horn and stations were accepted by Fulkerson and installed in the building before December 16, 1964.

"10. The fire alarm system would not operate with the use of a 24 volt horn.

"11. After Fulkerson had learned that the fire alarm system required a 12 volt horn to be operative he obtained such horn on February 25, 1965, through the use plaintiff and in the early part of April 1965, installed it in the system.

"14. The price agreed upon between Fulkerson and use plaintiff for the materials was the sum of $8,160.-22, of which $400.33 was paid by Fulkerson, leaving a balance of $7,759.89 unpaid and owing, which Fulkerson has failed to pay although demand was made upon him.

"15. On March 26, 1965, the use plaintiff gave written notice to McBride that it claimed $7,759.89 for electrical supplies furnished to the sub-contractor, Fulkerson, for use in the prosecution of the work required by the contract that materials were furnished between June 30, 1964, and February 22, 1965. The notice was served by mailing the same to McBride.

"18. Use plaintiff had no contractual relationship express or implied with McBride."

Electric claims error by reason of the trial court's refusal to adopt its requested finding of fact which reads as follows:

"5. The first of said materials and supplies was furnished to Fulkerson by the plaintiff on June 30, 1964 and the last on February 25, 1965."

Electric also challenges the following conclusions of law made by the trial court:

"3. The use plaintiff had an enforceable claim against Fulkerson for all material furnished and for which claim was made on or before December 7, 1964.

"4. Use plaintiff failed to comply with the notice requirement specified in § 6–6–12, N.M.S.A., 1953, in that notice was not timely mailed.

"5. Use plaintiff is not entitled to judgment in this cause and the complaint should be dismissed."

By letter dated March 26, 1965, Electric gave written notice to McBride, claiming a balance due of $7,759.89 for materials furnished to Fulkerson, and which were used in the construction of the Farmington High School building. Enclosed with said letter was a detailed statement of the account, together with a copy of each individual invoice made by Electric, which said invoices described the various items of equipment furnished by Simplex Time Recorder Company to Electric and by it to the subcontractor Fulkerson. One invoice described a 24-volt fire alarm horn delivered on November 25, 1964.

Section 6–6–12(a), supra, gives the supplier of materials to a subcontractor engaged in work on a public building a right of recovery against the general contractor's payment bond, if such supplier shall give:

" * * * written notice to said contractor within ninety [90] days from the date on which such person * * * furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed, and the name of the party to whom the material was furnished or supplied * * *."

It is conceded here and it has been held that the giving of written notice is mandatory as a strict condition precedent to the existence of any right of action upon the payment bond. United States for Use and Benefit of American Radiator & Standard Sanitary Corporation v. Northwestern Engineering Co., 122 F.2d 600 (8th Cir. 1941).

The sole question presented is whether Electric gave the prime contractor McBride written notice of its claim for electrical material furnished by it to the subcontractor Fulkerson within ninety days from the date on which the last material was furnished for which such claim is made.

Electric contends that the subcontractor Fulkerson took delivery from Electric of a 12-volt horn on February 25, 1965, which horn was part of the fire alarm system installed in the project by Fulkerson pursuant to his subcontract with McBride, and that said horn was the last material furnished by it on the job. It is not questioned that Fulkerson obtained a 12-volt horn on February 25, 1965. This is so because the evidence shows and the trial court found that the fire alarm system in the old part of the building required a 12-volt system; that the voltage requirement of the new system was not specified in the plans and specifications; that Fulkerson ordered a fire alarm horn and two fire stations but did not specify the voltage or other characteristics; that Electric delivered to Fulkerson a 24-volt horn on November 25, 1964, which was installed in the building before December 16, 1964; that the fire alarm system would not operate with the 24-volt horn; and that on February 25, 1965, a 12-volt horn was obtained and installed in the early part of April 1965.

The evidence further shows that Fulkerson obtained the 12-volt horn on February 25, 1965, at the office of Simplex Time Recorder Company. However, the fact remains that no determination could be made as to the voltage requirement of the new system by an inspection of the plans and specifications, and that determination could only be made by an examination of the existing facilities at the job site. Shortly before Christmas 1964, but after the 24-volt horn had been installed, Mr. Carl Holcomb, the office manager of Simplex, after inspecting the science building, advised Fulkerson that the 24-volt horn was the wrong voltage; that a 12-volt horn was necessary and that he would obtain such a horn for Fulkerson. On February 25, 1965, Fulkerson was in the office of Simplex and at that time Fulkerson took a 12-volt horn.

The language of § 6–6–12(a), supra, is clear that the supplier's right of action on the payment bond is conditioned upon giving written notice to the contractor within ninety days from the date on which the supplier furnished or supplied the last of the material for which such claim is made. It was stipulated that McBride received the letter dated March 26, 1965, on March 30, 1965. Thus, Electric was required to show that the notice of claim was made within ninety days from the date of the furnishing of the last item of material for which claim is made.

■ Electric argues that the billing clerk made a mistake and should have included an invoice for the 12-volt horn with the March 26, 1965, letter. Nowhere in the invoices attached to the March 26, 1965, letter was the 12-volt horn identified or described. We cannot ignore the very prerequisite which the legislature prescribed as a condition precedent to the accrual of any right against the contractor's bond. State for Use of Komac Paint and Wallpaper Store v. H. R. McBride Const. Co., 74 N.M. 233, 392 P.2d 577 (1964); Silver v. Fidelity & Deposit Co. of Maryland, 40 N.M. 33, 53 P.2d 459 (1935).

■ Thus the 12-volt horn was not an item of material for which claim is made, as it was furnished three days after the time mentioned in the letter of March 26, 1965.

■ Electric also seems to contend that the statute requires written notice of claim within ninety days of the date the last item of material was delivered by supplier to the subcontractor. This is incorrect. The statute requires written notice of claim within ninety days of the date the last item of material "for which such claim is made" was delivered by the supplier to the subcontractor. This is the express language of § 6–6–12(a), supra.

Electric relies on United States of America for the use of General Electric Company v. Gunnar I. Johnson & Son, Inc., 310 F.2d 899 (8th Cir. 1962), in support of its position. In that case, the stipulated facts disclosed that the main purchase order covered an entire electrical distribution system which was to be engineered and manufactured by General Electric Company for the specific project. The subcontractor ordered from General Electric Company from time to time various articles of electrical equipment and materials for delivery at the job site. Two of the parts, "two bus duct elbows," which were essential component parts of the system and without which the project was incomplete, were initially shipped to the subcontractor on December 23, 1959, in such a defective or improperly prepared condition that they could not be installed in the system. The two bus duct elbows which required alteration were returned to the factory and, after being altered to meet the requirements for their installation into the system, were reshipped from the factory to the job site on April 5, 1960, on a "no charge" basis. On April 6, 1960, the notice of claim was mailed and it was received by the prime contractor, Gunnar I. Johnson & Son, Inc., on April 7, 1960. No question was raised as to the adequacy of the contents of the notice or the

validity of the service. The court stated the issue as follows:

"The question thus narrows itself to a determination of whether the two bus duct elbows above referred to were 'furnished' on December 23, 1959, or on April 5, 1960. * * *"

After setting out the stipulated facts, the court said:

"It is obvious that said bus duct elbows are a part of the material 'for which claim is made.' * * *"

The court also observed that the case was distinguishable from those cases involving the performance of labor and supplying of minor items of material for the purpose of correcting defects, or making repairs following inspection of the project.

United States v. Gunnar I. Johnson & Son, Inc., supra, is distinguishable from the instant case. In that case the written notice included a claim for two defective items which were delivered twice, the first time in a defective condition and the second time in proper condition.

In the case before us no items were redelivered. The 12–volt horn furnished on February 25, 1965, was altogether new and different and was not mentioned or covered by the March 25, 1965, letter. Also, in United States v. Gunnar I. Johnson & Son, Inc., supra, the use plaintiff General Electric Company was responsible and at fault for the defective items when first delivered. Such is not the case here. In this case, Fulkerson obtained precisely what he ordered, a fire alarm horn of unspecified voltage, which he accepted and installed in November 1964. Further, in the Johnson case, supra, the defective items of material were corrected and redelivered before completion and final inspection of the project. This also is not the case here. It should be noted that, in the case before us, the contractor was never informed of the inoperable fire alarm horn by Fulkerson, Electric, or the School Board until after December 29, 1965, and the contractor did not make demand upon Fulkerson or Electric to correct the condition.

We are not convinced by other cases cited by use plaintiff because all of them are distinguishable from the instant case.

As we said in State v. McBride, supra:

"* * * [W]e cannot, * * * in the guise of liberality justify completely ignoring the very prerequisite which the legislature prescribed as a condition precedent to the accrual of any right against the contractor's bond."

■ Accordingly, since no claim was made in the March 26, 1965, letter for any items of material delivered after February 2, 1965, and since every item of material described in the invoices attached to the letter was delivered on or before December 7, 1964, no claim was made in the letter for the 12-volt horn furnished Fulkerson on February 25, 1965, and the trial court was correct in holding that the written notice was not timely.

In view of the disposition made, it is unnecessary to consider McBride's contention concerning the validity of permission to add a party. See Supreme Court Rule 17(2) (§ 21–2–1(17) (2), N.M.S.A., 1953 Comp., 1967 Pocket Supp.). McBride was the successful party.

The judgment of the district court is affirmed.

It is so ordered.

NOBLE and COMPTON, JJ., concur.